**2021-1963, -1987**

# United States Court of Appeals for the Federal Circuit

EVOLUSION CONCEPTS, INC.,
*Plaintiff-Appellant,*

– v. –

HOC EVENTS, INC., dba Supertool USA,
*Defendant.*

EVOLUSION CONCEPTS, INC.,
*Plaintiff-Appellant,*

– v. –

JUGGERNAUT TACTICAL, INC.,
*Defendant-Appellee.*

*On Appeal from the United States District Court for the Central District of California in No. 8:18-cv-01378-JLS-DFM, Judge Josephine L. Staton.*

## BRIEF FOR APPELLEE JUGGERNAUT TACTICAL, INC.

GREGORY PERRONE
BRAXTON PERRONE PLLC
5 Cowboy Way, Suite 300
Box 32
Frisco, Texas 75034
(469) 814-0028
perrone@braxtonperrone.com

*Counsel for Appellee Juggernaut Tactical, Inc.*

SEPTEMBER 8, 2021

**Patent No. 8,756,845: Claims 1 and 8**

1. A firearm with a fixed magazine comprising
a lower receiver having a magazine well configured to receive a magazine with a side-locking recess with a recess in the magazine well
a magazine catch bar securely attached to the firearm, said magazine catch bar resting within the magazine side-locking recess
an upper tension bar which extends towards and contacts the upper receiver.

8. A device for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising
A magazine catch bar securely attached to the lower receiver of said firearm, said magazine catch bar resting within the magazine side-locking recess
An upper tension bar which extends towards and contacts the upper receiver

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 21-1987

**Short Case Caption** Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc.

**Filing Party/Entity** JUGGERNAUT TACTICAL, INC.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/14/2021

Signature: /s/ Gregory Perrone

Name: Gregory Perrone

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| JUGGERNAUT TACTICAL, INC. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

Case: 21-1967 Document: 14 Page: 5 Filed: 08/03/2021



**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| One LLP | Uleses C. Henderson, Jr. | |
| Hankin Patent Law, APC | Marc E. Hankin | Anooj Patel |
| Bobby W. Braxton | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Evolusion Concepts, Inc. v. Hoc Events, Inc.<br>Fed. Cir. Case No. 21-1963 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

STATEMENT OF RELATED CASES .......... iv

STATEMENT OF ISSUES .......... 1

STATEMENT OF THE CASE WITH ADDITIONAL RELEVANT FACTS .......... 2

SUMMARY OF ARGUMENT .......... 8

ARGUMENT .......... 10

I. STANDARD OF REVIEW .......... 10

II. THE COURT CORRECTLY CONSTRUED “MAGAZINE CATCH BAR” .......... 10

III. THE COURT CORRECTLY GRANTED SUMMARY JUDGMENT OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS .......... 31

CONCLUSION .......... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011) ....................12

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ....................32

*Alloc, Inc. v. Int'l Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003) .................... 11-12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (U.S. 1986) ....................32

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................32

*Cross. Med. Pros. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ....................37

*Cybor Corp. v. FAS Tecs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) ....................10

*Dairyland Power Co-op. v. United States,*
16 F.3d 1197 (Fed. Cir. 1994) ....................32

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) ....................34

*E.I. du Pont de Nemours & Co. v. MacDermid, Inc.*,
No. 06-3383, 2010 U.S. Dist. LEXIS 23750 (March 15, 2010) ....................29

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*,
998 F.3d 917 (Fed. Cir. 2021) .................... 10, 31, 34

*Festo Corp. v. Shoketsu Kinsoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722 (2002).................... 36, 37

*Fin Control Sys. Pty. Ltd. v. OAM Inc.*,
265 F.3d 1311, 2001 U.S. App. LEXIS 20326, 60 U.S.P.Q.2d
(BNA) 1203 (Fed. Cir. 2001) .................... 28, 29, 30, 31

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950)....................31

*Gutterglove, Inc. v. Am. Die & Rollforming, Inc.*,
2017 U.S. Dist. LEXIS 153362, 2017 WL 4124229
(E.D. Cal. 2017) ............................................................................11

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed. Cir. 1989) ...........................................................32

*Microsoft Corp. v. Multi–Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004) ...........................................................11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ............................................... 11, 20, 23

*Phonometrics, Inc. v. N. Telecom, Inc.*,
133 F.3d 1459, 45 U.S.P.Q.2d (BNA) 1421 (Fed. Cir. 1998).......................28

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008) ...........................................................12

*T.F.H. Publ'ns, Inc. v. 3M Co.*,
No. 11-3106, 2014 U.S. Dist. LEXIS 59686 (N.J. Apr. 30, 2014) ..............29

*Toro Co. v. White Consol. Indus.*,
199 F.3d 1295 (Fed. Cir. 1999) ...........................................................12

*Tritek Techs., Inc. v. United States*,
No. 02-755, 2004 U.S. Claims LEXIS 142 (Ct. Cl. 2004)............................29

*Verizon Service Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) .................................................... *passim*

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ...........................................................12

*Warner-Jenkinson Co. v. Hilton David Chem. Co.*,
520 U.S. 17 (1997)......................................................................... 31, 32, 34

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the lower body was previously before this or any other appellate court. Counsel knows of no other case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision of the pending consolidated appeal.

## STATEMENT OF ISSUES

Did the district court err by granting summary judgment of noninfringement and by denying summary judgment of infringement by construing "magazine catch bar" based on (1) the statement in the specification that "[t]he invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention.", (2) the fact that no figures show an OEM magazine catch bar, (3) the fact that there is no disclosure as to how one would utilize an OEM magazine catch bar, (4) the specification consistently discusses removing the OEM magazine catch bar, (5) unasserted Claim 15 distinguishes between factory installed magazine catch bar, which is removed, and a magazine catch bar which is subsequently installed. Further, did the district court err in granting summary judgment of non-infringement based on the doctrine of equivalents when (1) no reasonable trier of fact could find that the accused product's magazine catch bar is the equivalent of the claimed non-factory installed magazine catch bar, and (2) Evolusion proffered no evidence that the accused factory installed magazine catch bar performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed non-factory magazine catch bar.

## STATEMENT OF THE CASE WITH ADDITIONAL RELEVANT FACTS

U.S. Patent No. 8,756,845 ("'845 Patent") is entitled "Method and Device for Converting Firearm With Detachable Magazine To A Firearm With Fixed Magazine." The '845 Patent received a first office action allowance at the USPTO so there is no prosecution history to review.

The '845 Patent notes that a "detachable magazine allows a user to fire the gun multiple times until all bullets in the magazine have been fired. When the magazine is depleted, the user pushes a magazine release button. This releases the magazine from the rifle." Appx00066 (col. 1, ll. 22-25). The specification continues in describing proposed legislation which defines a fixed magazine as "an ammunition feeding device that is permanently fixed to the firearm in such a manner that it cannot be removed without disassembly of the firearm." *Id*. (col. 1, ll. 50-53). The '845 Patent predicts planned legislation which would ban semi-automatic rifles with detachable magazines. As such, it notes that "[w]hat is needed is a device and method for easily converting a semi-automatic rifle with a detachable magazine to a semi-automatic rifle with a fixed magazine." *Id*. (col. 1, ll. 64-66).

The '845 Patent provides that the original equipment manufacturer ("OEM") semi-automatic rifles contain a magazine catch assembly. *See id*. (col. 2, ll. 35-53). The specification then notes the following:

> The invention is a device which is installed as a permanent component of the firearm. **<u>The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention</u>**.

Appx00066 (col. 2, ll. 54-58)(emphasis added).

The’845 Patent has five figures. Each of the figures shows a device, and none of the figures have flow charts showing any method. Figure 1 shows “the invention 10” installed. The specification notes that “the invention 10 is securely placed in a recess in the magazine well 45 to hold the magazine 40 in place so that it cannot be removed from the magazine well 45.” Appx00067 (col. 4, ll. 65-67). Figure 1 does not illustrate an OEM magazine catch bar. None of the figures of the ‘845 Patent illustrate an OEM magazine catch bar. In fact, Evolusion’s own technical expert admitted that none of the figures illustrate an OEM magazine catch bar. Appx15067(ll.19-22).

The ‘845 Patent does mention a factory installed magazine catch bar. However, every time a factory installed magazine catch bar is mentioned, it is removed. The Summary of the Invention mentions “factory” eight times, and OEM twice. The Detailed Description mentions “factory” one time, and never mentions OEM. As to the Summary, it states the invention is added by “removing the standard OEM magazine catch assembly and installing the invention.”

Appx00066 (col. 2, ll. 56-58). The Summary later states that the conversion from a detachable into a fixed magazine starts with "removing the factory installed magazine release assembly . . . ." Appx00067 (col. 3, ll.50-60). That is the extent of the discussion of OEM or factory in the Summary. In all instances where factory or OEM is discussed in the Summary, the OEM magazine catch bar or factory installed magazine catch bar or factory installed magazine release assembly are being removed. There is no discussion of their reinstallation, or, more importantly, their concurrent use with the device. Every reading of the patent requires that once the OEM magazine catch bar is removed, it is no longer used, and a different device takes its place.

As to the Detailed Description, the term "OEM" is never used. The term "factory" is used once. The Detailed Description states "[t]he screw 130 is placed through a screw spacer 170 and then extended through the lower receiver 30 such that the screw spacer 170 is located on the side of the lower receiver 30 **where the factory installed magazine release button was located.**" Appx00068 (col. 6, ll. 51-55)(emphasis added). The only time the term "factory" is used in the Detailed Description is to show that the factory installed magazine release button was removed. Neither the Summary, the Detailed Description, nor the figures show or describe any embodiment wherein the OEM magazine catch bar is utilized. The '845 Patent is consistent that the OEM magazine catch bar is removed.

There are no embodiments in the ‘845 Patent which utilize an OEM magazine catch bar. During his deposition, after it was agreed that no ’85 Patent figures disclose an OEM magazine catch assembly, Evolusion’s technical expert, Dr. Batzer was asked to “point to anything in the specification, not the claims, but the specification of any embodiment in the ‘845 patent where they use an OEM magazine catch.” Appx15068 (ll. 3-10). He responded that “[t]he text that I think is most relevant is what I discussed in column four in lines 46 through 53 I believe it is where there is such a well-known rifle that it’s not discussed - - you know, every aspect of it is not discussed.” Appx15068 (ll. 7-10). The cited section reads as follows:

> Since the basic firearm is of a well-known type, only those parts of the firearm essential to an understanding of the invention will be described in detail. Although the present invention will be described with reference to the exemplary embodiments shown in the drawings, it should be understood that the present invention can be embodied in many alternate forms or embodiments. In addition, any suitable size, shape or type of elements or materials could be used.

Appx00067 (col. 4, ll. 46-53). The “most relevant” support that Evolusion’s expert can cite is the boilerplate language commonly used in the specification.

As noted, the '845 Patent received a first office action allowance from the patent examiner – Evolusion was granted every claim they initially sought. Appx01026. There is only one independent method claim – claim 15. Claim 15 expressly requires removal of the "factory installed magazine release button assembly." Despite current statements by Evolusion that their device can utilize an OEM magazine catch bar, its only independent method claim did not cover that situation. There is no method claim which allows the OEM magazine catch bar to remain intact.

Claim 15 introduces the term "the factory installed magazine catch bar". Claim 15 claims the method of removing all parts of the factory installed magazine release button assembly and rotating the factory installed magazine catch bar to unthread it from its factory installed screw end of the magazine release button. Then, Claim 15 introduces a new term, "a magazine catch bar" which is installed as a replacement of the unthreaded factory installed magazine catch bar. Due to the antecedent basis, this is a new and different term than "factory installed magazine catch bar."

Evolusion filed suit against Juggernaut on August 6, 2018. The original complaint filed against Juggernaut including an allegation of infringement of claim 15. In response to a Rule 11 letter wherein Juggernaut demonstrated that the OEM

magazine catch bar is left intact, Evolusion dropped the allegation of claim 15. Appx01006-01007.

Evolusion filed two separate expert reports on infringement. As noted below, the first expert report only discussed the doctrine of equivalents as to the term "upper tension bar." The first expert report never addressed the doctrine of equivalents as to "magazine catch bar." The second expert report was entirely silent as to doctrine of equivalents. Thus, Evolusion presented no evidence as to equivalents of the term "magazine catch bar." Evolusion is now asserting that the district court erred in granting summary judgment of noninfringement under the doctrine of equivalents despite Evolusion not providing any evidence as to the doctrine of equivalents and the term magazine catch bar.

On November 13, 2020, Evolusion and Juggernaut filed cross motions for Summary Judgment. Based in part on the above, on April 5, 2021, the district court concluded that the term magazine catch bar must necessarily exclude an OEM magazine catch. The court stated that "construing the term 'magazine catch bar' to exclude a factory-installed magazine catch bar renders the patent internally consistent and in line with 'what the inventors actually invented and intended to envelop with the claim.'" Appx00017.

## SUMMARY OF ARGUMENT

The intent and scope of the patent is very clear. The specification does not hide what the invention is, and in fact, defines the invention. The '845 Patent plainly states "[t]he invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." Appx00066 (col. 2, ll. 55-58.). The '845 Patent is abundantly clear that the device cannot function with the OEM magazine catch assembly. No figures show an OEM magazine catch assembly. There is no discussion of how an OEM magazine catch assembly could function, and the only references to an OEM magazine catch assembly are in their removal. Further, the only method claim involves removing the OEM magazine catch assembly. By defining the invention in this way, the Applicant narrowed the scope of its invention.

In attempts to disavow this language, Evolusion makes the novel but nonsensical argument that this sentence applies only to method claim 15. As seen above, the sentence does not refer to a method, claim 15, etc. In fact, the sentence ends with "installing the invention." Certainly, the invention includes the device. The user would not install "the method" as Evolusion proposes. Further, the previous sentence in the specification states "[t]he invention is a device. . . ."

Appx00066 (col. 2, ll. 54-55). Certainly these sentences, which define the invention, limits the scope of the entire patent and not just claim 15.

Additionally, claim 15, distinguishes “a magazine catch bar” which is installed from “the factory installed magazine catch bar” which is removed. Claim 15 recognizes, through antecedent basis, that there is a difference between “the factory installed magazine catch bar” and the replacement “magazine catch bar.”

Evolusion also argues that the district court erred in granting summary judgment that the Accused Products do not infringe the asserted claims of the ‘845 Patent under the doctrine of equivalents. It argues that the district court failed to analyze whether the factory-installed magazine catch bar and a magazine catch bar that was not factory-installed meet the well-known “function-way-result” test.

The district court properly granted summary judgment of non-infringement under the doctrine of equivalents. It concluded that on the record before it and in view of the construction of the term “magazine catch bar” no reasonable trier of fact could find that the accused product’s magazine catch bar is the equivalent of the claimed non-factory installed magazine catch bar. Appx00019. The district court correctly concluded that there is no shortcoming in the language of the term “magazine catch bar” that supports invoking the doctrine of equivalents as the claim language would be vitiated. *Id.* Further, as discussed in detail below Evolusion proffered no evidence that the accused factory installed magazine catch

bar performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed non-factory magazine catch bar.

# ARGUMENT

## I. STANDARD OF REVIEW

The broad issue on appeal is claim construction. Claim construction is a question of law, which this Court reviews *de novo*. *See Cybor Corp. v. FAS Tecs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998)(en banc). Additionally, the district court's grant of summary judgment of non-infringement is reviewed *de novo. Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 919 (Fed. Cir. 2021)(applying Ninth Circuit standard of review).

## II. THE COURT CORRECTLY CONSTRUED "MAGAZINE CATCH BAR"

Both parties agreed that when installed correctly, the Accused Products do "not replace the [OEM] magazine catch." Appx00008. Because every asserted claim requires a magazine catch bar, if "magazine catch bar" does not include an OEM magazine catch, there is no infringement. Appellant's only disagreement is the construction of magazine catch bar.

As the district court correctly found, "construing the claim term 'magazine catch bar' to exclude a factory-installed magazine catch bar renders the patent internally consistent and in line with 'what the inventors actually invented and intended to envelop with the claim.'" Appx00017 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

A. "The Invention Is" Language Limits the Scope of the Invention

As stated explicitly by the '845 Patent and recognized by the court in its Order Granting Summary Judgment, "[t]he invention is a permanent fixture **added to** a semi-automatic firearm by **removing the standard OEM magazine catch assembly and installing the invention**." Appx00066 (col. 2, ll. 55-58)(emphasis added); Appx00014. "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Service Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). When a specification describes a feature as "this invention" rather than as a preferred embodiment, a claim term should be construed as required by the "invention." *See Gutterglove, Inc. v. Am. Die & Rollforming, Inc*., 2017 U.S. Dist. LEXIS 153362, *29, 2017 WL 4124229 (E.D. Cal. 2017). *See also Microsoft Corp. v. Multi–Tech Sys., Inc.*, 357 F.3d 1340, 1351–52 (Fed. Cir. 2004) (construing claim to require feature that was "central to the functioning of the claimed invention"); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1369–70

(Fed. Cir. 2003) (construing claim to include limitation because "very character of the invention" required that the limitation be part of every embodiment); *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1300– 01 (Fed. Cir. 1999) (construing claim to require a particular configuration where specification described the importance of the configuration and did not disclose others).

*Verizon* is not absolute, as Judge Staton recognizes in her order; there are exceptions. But as the district court rightly concluded, none of the exceptions apply here. In *Absolute Software, Inc. v. Stealth Signal, Inc.*, this court concluded that the phrase "present invention" is not limiting where references to "the invention" are not uniform or "where other portions of the intrinsic evidence do not support applying the limitation to the entire patent." 659 F.3d 1121, 1136-37 (Fed. Cir. 2011). One example, cited in *Absolute Software*, is where the specification does not uniformly refer to the invention as being limited and where the prosecution history did not yield a limitation. *Id*. (citing *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320-22 (Fed. Cir. 2008)). Another example is where the statements of "the invention" were contradicted "by a number of express statements in the … specification clearly indicating that [the feature at issue] is a feature only of certain embodiments." *Id*. (citing *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1326 (Fed. Cir. 2008). In *Absolute Software*, the specification expressly described the limiting feature as optional. *Id*.

Here, there is no substantive prosecution history to review as there was no claim rejection. There is nothing else in the specification which is inconsistent with the inventors' express definition of "the invention". All of the figures and the remainder of the specification are consistent that the invention requires removal of the OEM magazine catch assembly. Patent figures 1-5 illustrate this. Further, the only method claimed or disclosed is consistent with this definition. The entirety of the teaching of the '845 Patent is in line with this definition. In fact, the '845 Patent even labels the device 10 in Figure 1, reproduced below, and calls it "the invention." The '845 Patent states "As shown in FIG. 1, when the lower receiver 30 is attached to the upper receiver 20, the **invention 10** is securely placed in a recess in the magazine well 45 to hold the magazine 40 in place so that it cannot be removed from the magazine well 45." Appx00067 (col. 4, ll. 65-67)(emphasis added). Here, when discussing "the invention", Evolusion unequivocally refers to a physical device. Further proof is that later, when referencing numeral 10, Evolusion refers to it as "[t]he device 10 . . . ." Appx00068 (col. 5, ll. 5-8). Thus, the '845 Patent expressly calls the device the invention. The language of the "invention is" in column 2, lines 55-58 applies to the entire specification of the '845 Patent. The argument that this language applies only to the method, when the specification explicitly calls the invention the device, is nonsensical.




FIG. 1

As noted, because there is nothing in the specification or prosecution history which is inconsistent with the limiting definition of "the invention", this description limits the scope of the invention.

Plaintiff chose to define the invention in the specification. Nothing required Plaintiff to expressly define the invention this way, but Plaintiff did so. Plaintiff defined the "invention" as a "permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." Because the patentee described the invention as a whole as requiring removal of the standard OEM magazine catch assembly, this description limits the scope of the invention. *See Verizon Service Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). Every claim requires this feature. None of the exceptions to *Verizon* apply, so the general rule stands: because Appellant defined the invention as excluding an OEM magazine catch assembly, this description

limits the scope. It is worth noting, that this exclusion comports with the remainder of the specification, discussed below.

Evolusion takes a novel, and previously unpresented, approach to the "invention is" language. Essentially, Evolusion argues that the "invention is" language only applies to the method of claim 15. Evolusion is amending the language from "The invention is . . . " to "The method of Claim 15 is . . .". While a clever last-ditch argument, this argument is not supported by any evidence, intrinsic or otherwise. In fact, such an argument cuts against the plain teachings in specification of the '845 Patent.

To reach this novel world where "The invention is" language is transformed as needed by Evolusion, Evolusion draws an imaginary and circuitous line in the Summary of the Invention. Evolusion contends that paragraphs 1-6 (Appx00066, col. 2, ll. 3-53) and 8-9 (Appx00066-00067, col. 2, ll. 3-47) are devoted solely to the device, whereas paragraphs 7 (which conveniently has the "invention is" language)(Appx00066, col. 2, ll. 54-64) and 10(Appx00067, col. 3, line 47 – col. 4, line 27) are devoted solely to the method. There is no support for such imaginary and arbitrary line-drawing. Evolusion argues that the first 6 paragraphs only discuss the device, then in paragraph 7 the method is discussed, we go back to the device for paragraphs 8 and 9, and then finish going back to the method. This is absurd.

The term "method" appears eight times in the entire Summary. The first instance is in the first sentence of the Summary, which is a recitation of the title: "The present invention is a device and method for converting a semi-automatic rifle with a detachable magazine into a semi-automatic rifle with a fixed magazine." Appx00066 (Col. 2, ll. 3-5). The word "method" doesn't appear again until the last paragraph. The last paragraph switches gears and states "[i]n accordance with **another aspect of the invention**, a method is provided for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising the steps of . . . ." App00067 (Col. 3, ll.48-64)(emphasis added). That paragraph then goes to recite, almost word-for-word, the limitations of claim 15. The point is that there is a paragraph in the Summary which covers the method- the last paragraph. It recites the term "method" seven times and parrots the language of the independent method claim almost verbatim. It clearly switches gears to discuss the method by stating in "another aspect of the invention, a method is provided. . . ." App00067. Thus, this paragraph goes out of its way to state it covers the method. Conversely, the "invention is" paragraph, which Evolusion has designated a "method paragraph" pertaining only to the method, does not recite the word method and does not parrot the limitations of a method claim. This paragraph does not discuss how to install a magazine catch bar or an upper tension bar. There is nothing to suggest that the "invention is" paragraph

should only apply and limit claim 15. The invention is language speaks to the entire invention – not just claim 15. Labeling the entire paragraph as applying only to the method has no basis in fact.

Furthermore, the paragraph that Evolusion has deemed as covering only the method begins with the sentence "[t]he invention is a device which is installed as a permanent component of the firearm." Appx00066 (col. 2, ll. 54-55). Certainly, this sentence refers to the device, and yet, based on the arbitrary paragraph labeling, Evolusion urges that this entire paragraph is only directed to Claim 15. The fact that they have to resort to plucking a single paragraph illustrates that they have no argument against the "invention is" language. Applicant chose this language. They did not have to put this language in. The language applies certainly applies to the device.

As noted above, the specification of the '845 Patent also uses "the invention 10" (Appx00067, col. 4, ll. 65-67) and "the device 10" (Appx00068, col. 5, l. 5-6) interchangeably. Certainly, the invention applies to the device.

Additionally, the sentence in question eliminates any doubt that it refers only to the method. The sentence reads "[t]he invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and **installing the invention**." Appx00066 (col. 2, ll. 54-58)(emphasis added). While most of the analysis has focused on the beginning of the sentence, the end of

the sentence makes clear that it is not focused on the method. The sentence ends with "installing the invention." If the "invention" only meant method, this sentence wouldn't make sense. The user installs the device; the user does not install a method. The ending of the sentence makes clear that this sentence is not limited to only a method as Evolusion now claims.

Additionally, lest there be any doubt, the sentence preceding this sentence reads "**[t]he invention is a device** which is installed as a permanent component of the firearm." Appx00066 (col. 2, ll. 54-55)(emphasis added). This sentence makes clear that the invention is a device. This sentence, and the paragraph, certainly applies to a device. Evolusion's argument that the "single sentence the court relied on describes the method, not the products" (Doc 13-1 at p. 39) makes no sense and belies the entirety of the patent.

The sentence in question certainly applies to the device as well. This is Evolusion's primary complaint about claim construction. Their entire argument hinges on the assumption that this sentence, which refers to "installing the invention" is limited to the method. As shown above, it is clear that this sentence is not limited to the method or the device.

The intent of the '845 Patent is clear. All of the figures and all of the description comport with a device in which the standard OEM magazine is removed and a permanent fixture is added to convert the firearm to a fixed

magazine. The title says as much. Evolusion's gymnastics aside, they cannot disavow this language, and the district court was right to consider this language in its construction. The "invention is" language narrows the scope of the invention. *See Verizon*, 503 F.3d at 1308. Evolusion is precluded from trying to reclaim what was clearly disavowed in the '845 Patent.

### B. The Term Magazine Catch Bar Excludes a Standard OEM Magazine Catch

When asked if an OEM magazine catch infringes the '845 Patent, Mr. Harris, co-inventor and owner of Plaintiff responded, "Not that I'm aware of." Appx15057 (l. 20). Mr. Harris's logic was that what he invented is a "modified magazine catch" and accordingly a standard OEM magazine catch cannot qualify as a magazine catch bar. Appx15057 (ll. 5-20). Specifically, Mr. Harris said "[b]ecause mine is modified. My - - my magazine catch is modified from an OEM magazine catch." Appx15057 (ll. 14-16). Mr. Harris's logic comports with the entirety of the specification of the '845 Patent. Mr. Harris's logic comports with the statement in the patent that "[t]he invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." Appx00066 (col. 2, ll. 55-58). Mr. Harris believed he

invented a modified magazine catch bar – one that is different than the standard OEM magazine catch. Mr. Harris's admission is completely at odds with Evolusion's position that the "magazine catch bar" can be OEM and non-OEM. Again, the inventor and owner stated he invented a modified magazine catch bar. His testimony comports with the specification and claims of the '845 Patent. His testimony further supports the district court's construction as it proves this construction is in line with "what the inventors actually invented and intended to envelop with the claim." *Phillips,* 415 F.3d at 1316.

It is first noted that co-inventor, and owner of Plaintiff testified that the term "magazine catch bar" does not have a well-known meaning in the industry. Appx15053 (l. 20-23). Evolusion's technical expert agreed that the term does not have a well-known meaning in the industry. Appx15066 (ll. 21-25). Thus, it is entirely necessary to review the '845 Patent to glean a construction.

The '845 Patent consistently describes "a **device and method** for easily converting a semi-automatic rifle with a detachable magazine to a semi-automatic rifle with a fixed magazine." Appx00066 (col. 1, lines 64-67)(emphasis added). As much as Evolusion wants there to be device paragraphs and method paragraphs, the '845 Patent is not segregated. The device and method for installing are mixed throughout. The specification describes a method for converting a firearm with a detachable magazine into a firearm with a fixed magazine. The first step is

"removing the factory installed magazine release assembly. . . ." Appx00067 (col. 3, ll. 50-51.) The button is depressed and the "factory installed magazine catch bar" is rotated in a counterclockwise fashion which allows the user to remove "all parts of the factory installed magazine release button assembly." Appx00067 (col. 3, ll. 51-60). Thereafter, a new and separate "magazine catch bar" is installed.

The '845 Patent teaches further that "[t]he device more specifically relates to a device which becomes an integral part of a semi-automatic rifle whereby a magazine catch is positioned such that a magazine can only be released when the upper receiver is removed from the lower receiver." Appx00066 (col. 2, ll. 5-9).

The '845 Patent even discusses a standard OEM magazine catch assembly. The '845 Patent states that a "standard OEM semi-automatic rifle contains a magazine catch assembly. A standard magazine catch assembly is comprised of a magazine catch, a spring, and a magazine release button." Appx00066 (col. 2, ll. 35-38.) Thus, the '845 Patent acknowledges that virtually every semi-automatic rifle has a standard OEM magazine catch assembly. When the '845 Patent discusses "removing the standard OEM magazine catch assembly" this includes removing the magazine catch, the spring, and the magazine release button. Appx00066 (col. 2, ll. 54-57).

Again, the specification is explicit that the magazine catch bar excludes the standard OEM magazine. There is no support for any other interpretation of the

'845 Patent. There are five figures in the '845 Patent and not a single one of them depicts an OEM magazine catch assembly. Plaintiff's expert agreed, and when asked if any figures show an OEM magazine catch, he replied "They do not." Appx15607 (Braxton Decl., Ex. D, at 42:19-22). The reasons they are not included is because the inventor himself did not consider using an OEM magazine catch assembly. If he did, there certainly would have been a figure showing such an embodiment.

During his deposition, after it was agreed that no figures disclose an OEM magazine catch assembly, Plaintiff's expert Dr. Batzer was asked to "point to anything in the specification, not the claims, but the specification of any embodiment in the '845 patent where they use an OEM magazine catch." Appx15068 (ll. 3-10). He responded that "[t]he text that I think is most relevant is what I discussed in column four in lines 46 through 53 I believe it is where there is such a well-known rifle that it's not discussed - - you know, every aspect of it is not discussed." *Id*. (ll. 7-10). The paragraph relied upon by Dr. Batzer as the "most relevant" is the boilerplate language which is present in almost every patent. The cited section simply states that "only those parts of the firearm essential to an understanding of the invention will be described in detail." Appx00067 (col. 4, ll. 46-58)

When the "most relevant" support that Evolusion's expert can cite is the boilerplate language, this is strong evidence that there is no support at all. Evolusion cannot cite to any figure or any example in the '845 Patent where an OEM magazine catch assembly is utilized. Evolusion's brief fails to do so. Instead, Evolusion's expert resorts to generalized boilerplate found in just about every patent. Simply, there is no support for Evolusion's position. The '845 Patent makes clear that a standard OEM magazine catch cannot qualify as a magazine catch bar.

The claims of the '845 Patent demonstrate that the '845 Patent requires removal of the factory installed magazine catch assembly. It is proper to look at all of the claims of the '845 Patent in determining the proper meaning of claim terms: "the claims themselves, *both asserted and unasserted*, provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (emphasis added). While Evolusion has withdrawn allegations of infringement of Independent Claim 15 by the Accused Products, Independent Claim 15 and Dependent Claims 16-20 remain instructive for determining the meaning of particular claim terms in Independent Claims 1 and 8. Claim 15 highlights the distinction between the "factory installed magazine catch bar" and the claimed "magazine catch bar" (as stated in Claims 1 and 8).

Claim 15, a truncated version of which is depicted below, is "[a] method for converting a firearm with a detachable magazine into a firearm with a fixed magazine", comprising the following steps:

1. Removing the **factory installed magazine release button assembly**, comprising the steps of:
   a. Depressing the magazine release button
   b. Rotating the **factory installed magazine catch bar**
   c. **Removing all parts of the factory installed magazine release button assembly**
2. Installing a **magazine catch bar** to the lower receiver of the firearm
3. Installing an upper tension bar to the lower receiver of the firearm

Notably, Claim 15 indicates, by a difference in its antecedent basis language, that there is a difference between the "factory installed magazine catch bar" and the "magazine catch bar". The removing step recites "removing the factory installed magazine release button assembly" whereas the subsequent installing steps recite "a magazine catch bar." These terms by definition refer to different and distinct items. The term "magazine catch bar" must necessarily exclude a factory installed magazine catch bar. Claims 1 and 8 likewise include the term "magazine catch bar" which also must necessarily exclude a factory installed

magazine catch bar. The patent applicant chose the language and should not be allowed to expand it contrary to the specification.

Claim 15 is further instructive on this issue since the ‘845 Patent issued from the Patent Office as a first office action allowance. This means that Evolusion was granted every claim it sought in its original state as filed. Claim 15 is the only independent method claim and it is limited to removing the OEM magazine catch. If, as Plaintiff suggests, the ‘845 Patent can utilize an OEM magazine catch, then where is the method claim where the OEM magazine catch is used? The only method claim describes its removal. If the patent is as broad as they claim, why didn’t they pursue a method claim where the OEM magazine catch is left intact?

The reason is clear. It was never the inventors’ intent to leave the OEM magazine catch intact; Mr. Harris’s deposition makes this clear. Claim 15 is limited to removing the OEM magazine catch because the ‘845 Patent is so limited. The specification only teaches one method of converting a firearm with a detachable magazine into a fixed magazine. In that method, the only method discussed, the first step is “removing the factory installed magazine release assembly.” Thus, the entirety of the teaching of the ‘845 Patent directed toward conversion requires removal of the OEM magazine catch assembly. Even if the inventors chose to eschew a method claim directed to making a fixed magazine firearm using an OEM magazine catch assembly, where is the discussion of the

method in the specification? It isn't there because that is not what was invented. Evolusion's calisthenics aside, the '845 Patent simply doesn't cover this.

Evolusion's appeal brief argues that the "Written Description Does Not Support the Court's Construction." If the Written Description supported Evolusion's proposed construction, wouldn't they cite to the description to undermine the District Court's construction? But in the that entire section (Argument IIA), Evolusion cites to the specification only once. The reason it runs from the specification like the plague is there is nothing in the Written Description to support Evolusion's contention that a magazine catch bar can include an OEM magazine catch. None of the figures support their contention, and there is not a single description showing how Evolusion's device can work with an OEM magazine catch. Again, every instance a factory installed magazine catch bar or an OEM magazine catch assembly is discussed, it is in reference to them being removed. If there were any support, Evolusion would have cited it.

The fact that this section in their brief fails to point to any support in the specification is proof that no such support exists. The fact that the only support Evolusion's expert could find was the boilerplate about all embodiments not being shown underscores that there is no support. Simply, Evolusion has failed to point to any figure or description supporting their contention.

Evolusion's brief argues that the "magazine catch bar" in the later part of claim 15 can be an OEM or a non-OEM magazine catch bar. Evolusion calls the term generic. Thus, even though different terms are used in claim 15, namely "factory installed magazine catch bar" and then separately, with a new antecedent bases, "a magazine catch bar", Evolusion says the later can include the former. This goes against every cannon of claim construction. This reading renders "factory installed" meaningless. More importantly, it just doesn't make sense. Claim 15 would then read remove the factory installed magazine catch bar, and then without any intervening steps, install the same magazine catch bar.

These gymnastics are unsupported by any figures or recitation of the '845 Patent that the original OEM can be utilized. These gymnastics are also against common sense. Finally, these gymnastics are also at odds with testimony of the inventor that he invented a modified magazine catch. Evolusion's citation to a youtube video where Supertool reuses the OEM magazine catch does not change what is in the '845 Patent. Simply, this argument carries no weight.

### C. The Term Magazine Catch Bar has Consistent and Uniform Meanings Across All Claims

Same terms appearing in different claims should be given the same meaning "unless it is clear from the specification and prosecution history that the terms have

different meanings at different portions of the claims." *Fin Control Sys. Pty. Ltd. v. OAM Inc.*, 265 F.3d 1311, 1318, 2001 U.S. App. LEXIS 20326, *15, 60 U.S.P.Q.2d (BNA) 1203, 1208 (Fed. Cir. 2001) (citing *Phonometrics, Inc. v. N. Telecom, Inc.*, 133 F.3d 1459, 1465, 45 U.S.P.Q.2d (BNA) 1421, 1426 (Fed. Cir. 1998)). Here, all claims use the term "magazine catch bar" and there is nothing in the specification or claims to suggest they have a different meaning. In fact, Evolusion argued during claim construction that Claim 15, while no longer asserted here, is "still instructive to claim construction, because it's presumed that the terms are used consistently in the patent." Appx15046 (ll. 6-14). As such, the claim term "magazine catch bar" is used consistently across all claims and should be accorded the same meaning.

Despite previously asserting, during a claim construction hearing, that "the terms are used consistently in the patent", Evolusion is now arguing that the terms "magazine catch bar" can have different meanings in Claims 1 and 8 than in Claim 15. They do this by taking issue with *Fin Control* and argue that it really only means that claim terms appearing in the same claim should have the same meaning. This is nonsense. First, *Fin Control* stands for the proposition that "same terms appearing in different portions **of the claims** should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." 254 F. 3d at

1318 (emphasis added). *Fin Control* refers to claim**s**, plural. *Fin Control* does not recite different portions of the claim – singular. On its face, *Fin Control* recites multiple claims. This negates Evolusion's assumption that *Fin Control* only applies to terms within a single claim.

Second, many courts have cited *Fin Control* for the same logic as did the district court. *See T.F.H. Publ'ns, Inc. v. 3M Co.*, No. 11-3106, 2014 U.S. Dist. LEXIS 59686, *16 (N.J. Apr. 30, 2014)( "A term appearing in different claims should be given the same meaning unless it is clear from the specification and prosecution history that the term at issue has a different meaning from claim to claim.")(citing *Fin Control*); *see also E.I. du Pont de Nemours & Co. v. MacDermid, Inc.*, No. 06-3383 2010 U.S. Dist. LEXIS 23750, *11-12 (March 15, 2010)( "The same term appearing in different claims should generally be given the same meaning unless it is clear from the specification and prosecution history that the term at issue has a different meaning from claim to claim."(citing *Fin Control*). In fact, the Court of Federal Claims similarly cited *Fin Control* for the same proposition. *See Tritek Techs., Inc. v. United States*, No. 02-755, 2004 U.S. Claims LEXIS 142, *36-37 (Ct. Cl. 2004)( "Words appearing in the same claim or multiple claims of the same patent should be interpreted consistently unless the specification and prosecution history clearly directs otherwise.")(citing *Fin Control*). Thus, Evolusion's attempt at reading *Fin Control* so narrowly goes

against 1) clear reading of *Fin Control*, 2) prior court's reading of *Fin Control*, and 3) Evolusion's previous statements at claim construction.

As demonstrated, the general rule is that claim terms appearing in different portions of the claim should be given the same meaning "unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Fin Control*, 265 F.3d at 1318. Here there is no prosecution history. Turning to the specification, as discussed at length above, there is nothing in the specification which makes clear that the term has a different meaning for the device and the method. There are no method figures. All of the figures are for the device. Thus, the figures do not demonstrate a different meaning of the term. Paragraph 10 of the Summary, which explicitly discusses the method provides no separate meaning of the term. In fact, it separately discusses a magazine catch bar from the "factory installed magazine catch bar." This paragraph comports with the remainder of the specification and the figures that the term "magazine catch bar" has a consistent meaning. Further, the Detailed Description does not refer to the method at all – the method is only discussed in the Summary. In short, there is nothing in the specification which shows the term "magazine catch bar" has a different meaning in the method and the device.

Tellingly, Evolusion admits in its brief that the terms are used consistently. Evolusion argues that "the patent's written description of the products <u>*consistently*</u>

refers only broadly to 'a magazine catch bar.'" Doc. 13-1 at *13. Thus, Evolusion admits the term is used consistently and therefore, the specification does not make clear that the term should have different meanings in the various claims. *Fin Control* controls and the term "magazine catch bar" should have the same meaning across all claims. That meaning is informed by the "invention is" language which makes clear that an OEM magazine catch bar does not qualify.

For these reasons, the district court did not err in granting summary judgment of non-infringement.

## III. **<u>THE COURT CORRECTLY GRANTED SUMMARY JUDGMENT OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS</u>**

The district court granted summary judgment of non-infringement under the doctrine of equivalents of the asserted claims of the '845 Patent. The district court's grant of summary judgment of non-infringement is reviewed *de novo. Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 919 (Fed. Cir. 2021)(applying Ninth Circuit standard of review). As the district court correctly noted, a finding of equivalence is a determination of fact, *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950), and the doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton David Chem. Co.*, 520 U.S. 17, 29 (1997). "[E]ven as to an individual element, [the doctrine] is not allowed such

broad play as to effectively eliminate that element in its entirety." *Id.*

On summary judgment, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party "may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States,* 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325). In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (U.S. 1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "The motion of an accused infringer for judgment on the ground of infringement may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989); *see also Dairyland Power, 16 F.3d 1197, 1202* (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325)("[a] nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law.").

Evolusion's argument that the district court's ruling is erroneous appears to be two-fold. First, Evolusion argues the district court should not have granted summary judgment of non-infringement under the doctrine of equivalents because the '845 Patent specification refers only to a non-factory installed magazine catch bar. Second, it argues that the district court erred in relying on *Festo* to conclude that Evolusion is estopped from asserting infringement under the doctrine of equivalents due to amendments to the claims. As discussed below, each of these arguments are contradicted by the record and the district court's order itself.

A. The District Court Properly Applied the Doctrine of Equivalents.

Evolusion argues the district court erred in granting summary judgment of non-infringement under the doctrine of equivalents because the '845 Patent specification refers only to a non-factory installed magazine catch bar. According to Evolusion,

> [T]he court did not recognize that because the '845 Patent does not disclose an embodiment of a product that includes a factory-installed magazine catch bar in combination with other limitations of claims 1 and 8, the patent drafter did not "disclose but decline to claim" or "deliberately [leave] unclaimed" that subject matter.

Appellant Br., pp. 24-25 (citing Appx00019). Apparently, Evolusion offers the above language from the district court's order to question the district court's

approach in concluding that no reasonable factfinder could find that a factory-installed magazine catch bar is the equivalent of the magazine catch bar claimed in claims 1 and 8. Regardless of how Evolusion couches its argument, the district court's analysis was correct when considering the claim language and the record evidence.

In *Munchkin,* the Federal Circuit outlined the vitiation doctrine and how it ensures the application of the doctrine of equivalents does not "effectively eliminate [a claim] element in its entirety." *Munchkin,* 998 F.3d at 923 (citing *Warner-Jenkinson*). "Claim vitiation is a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent'". *Id.* (citing *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356-57 (Fed. Cir. 2012)).

Evolusion ignores the entirety of the district court's analysis. The district court's order makes clear that it found that the language of the term magazine catch bar *does* capture the essence of the innovation and that a factory installed magazine catch bar is not an insubstantial alteration to the claims. Appx00019. Moreover, the district court was appropriately wary of not applying the doctrine too broadly so as to effectively eliminate the meaning of magazine catch bar from the claims. Appx00019.

While the district court outlined the various facets of application of the doctrine of equivalents, it did not as Evolusion urges, pigeonhole its doctrine of

equivalents conclusion on a finding that the factory-installed magazine catch bar is disclosed but unclaimed subject matter. Indeed, the district court's ruling on the meaning of magazine catch bar confirmed that the patent does not provide any teaching of use of a factory installed magazine catch bar as part of the invention. Appx00017 (magazine catch bar excludes factory-installed magazine catch bar). This is why the district court correctly found that "the shortcomings of the English language are clearly not at issue here", and the doctrine of equivalents does not need to come to the rescue of the claim language. Appx00019. Evolusion itself recognizes this insofar as it agrees that the '845 Patent offers no teaching of the invention that includes a factory magazine catch bar. Appellant Br., p. 25.

Evolusion also argues that the patent does not include any clear disavowal or disclaimer of factory-installed magazine catch bars. Appellant Br., p. 25. In making this argument, Evolusion disregards the construction of the term "magazine catch bar" that was grounded in the patent's "the invention is" language and the lack of any intrinsic evidence that could serve as an exception to the rule in *Verizon.* Appx00013-00014.

In sum, the district court properly concluded that no reasonable jury could have found that a factory-magazine catch bar is the equivalent of a non-factory installed magazine catch bar. Any application of the doctrine of equivalents would have vitiated the claim language itself. The district court's summary judgment of

non-infringement under the doctrine of equivalents should be affirmed.

### B. The District Court Did Not Grant Summary Judgment of Non-Infringement Under the Doctrine of Equivalents Based on the *Festo* Prosecution History Estoppel.

Evolusion also complains that the district court erroneously applied *Festo Corp. v. Shoketsu Kinsoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002), to rule that it is estopped from relying on infringement under the doctrine of equivalents due to claim amendments. Appellant Br., p. 25-26. Evolusion again misstates the district court's order.

The district court did not find that as a matter of law Evolusion is estopped from proving infringement under the doctrine of equivalents because of claim amendments during prosecution. It is difficult to understand how Evolusion's understanding of this may be gleaned from the district court's order. The district court simply cited *Festo* for the proposition that the doctrine allows the patentee to claim insubstantial alterations that were not captured in drafting the original patent claims but created through trivial changes. Appx00018. The district court repeated, "the doctrine of equivalents is premised on language's inability to capture the essence of innovation", citing *Festo* as authority. Appx00019.

The court closed the book on the issue by concluding that the "shortcomings of the English language are clearly not at issue here…." Appx00019. Importantly,

the district court made no reference or finding related to a claim amendment made during prosecution that invoked *Festo's* estoppel to reliance on the doctrine of equivalents. The district court, therefore, in no way erred in citing to *Festo* as part of its doctrine of equivalents analysis.

C. Summary Judgment was Appropriate Because Evolusion Offered No Evidence of Infringement Under the Doctrine of Equivalents.

Evolusion's confusing arguments notwithstanding, fatal to Evolusion's doctrine of equivalents argument is that it produced no evidence at the district court that the accused Juggernaut products infringe the '845 Patent under the doctrine of equivalents. Evolusion bears the burden to show that the properly construed claim reads on the accused device, either literally or under the doctrine of equivalents. *See Cross Med. Pros. V. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Evolusion offered no evidence at the district court on which a reasonable trier of fact could find that Juggernaut's accused products having a factory-installed magazine catch bar perform substantially the same function, in substantially the same way to achieve substantially the same result as a non-factory installed magazine catch bar. The district court's order granting summary judgment recites the procedural history of the case, in which the parties filed, then re-filed, their cross-motions for summary judgment on infringement. Appx00005.

Evolusion offered two expert reports of Dr. Stephen A. Batzer. Appx15358-15412 ("First Batzer Report"); Appx15413-15423 ("Second Batzer Report"). In neither report did Dr. Batzer offer any opinion on whether the Juggernaut accused product having a factory installed magazine catch bar was the equivalent of a non-factory installed magazine catch bar under the doctrine off equivalents. Dr. Batzer never rendered an opinion that the factory installed magazine catch bar performed substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed non-factory installed magazine catch bar.

In the First Batzer Report, Dr. Batzer opined only briefly on whether the accused Juggernaut device met the "upper tension bar" claim term under the doctrine of equivalents. Appx15396. Dr. Batzer explained "in the event it is determined that the Upper Tension Bar must apply a pressure to the left of right side of the upper receiver (as opposed to its mating surface with the lower receiver" to infringe, it is my opinion that the Hellfighter magazine lock infringes the asserted claims … under the doctrine of equivalents." *Id*. Dr. Batzer went to recite his opinion of what the upper tension bar limitations of the claims require. *Id*. He then concluded that the Hellfighter magazine lock met the function-way-result test. *Id.*

This is where Dr. Batzer's doctrine of equivalents analysis begins and ends.

He offered no opinion or analysis in the First Batzer Report that the magazine catch bar limitation was met by the accused device with its factory installed magazine catch bar and, therefore, infringed under doctrine of equivalents.

The same holds true for the Second Batzer Report. In this report, Dr. Batzer offers no opinion or analysis of infringement under the doctrine of equivalents in any respect. The absence of any opinion on the doctrine of equivalents in the Second Batzer Report is very telling as it was in response to Juggernaut's first summary judgment of non-infringement which included argument, and expert testimony, about the doctrine of equivalents and the term "magazine catch bar." The Second Batzer Report failed to even address the doctrine of equivalents.

Evolusion's appeal brief's absence of any citation to any record evidence at the district court is telling. Other than attorney argument, Evolusion cites to nothing in the record upon which a reasonable fact finder could conclude that the accused product, with its factory installed magazine catch bar, infringes the '845 Patent under the doctrine of equivalents.

Their various memoranda of law in response to Juggernaut's motions for summary judgment of non-infringement are no different. In its April 24, 2020 Response to Juggernaut's motion for summary judgment of non-infringement under the doctrine of equivalents, Evolusion made no argument and offered no evidence. Appx15309-15327. Similarly, in its March 5, 2021 response to

Juggernaut's re-urged motion for summary judgment of non-infringement, Evolusion once again argued and cited nothing in response to Juggernaut's motion with respect to the doctrine of equivalents for the magazine catch bar limitation. Appx15562-15592. Evolusion had two opportunities to offer evidence, as the non-moving party, to attempt to create a genuine issue of material fact on the issue of infringement under the doctrine of equivalents for a factory installed magazine catch bar, but if offered nothing.

In its own motion for summary judgment of infringement filed November 13, 2020, Evolusion devoted nine lines in its memorandum of law arguing how the factory installed magazine catch bar in the Juggernaut device meets the non-factory installed magazine catch bar under the doctrine of equivalents. Appx15469. Evolusion states that the factory installed magazine catch bar "rests within a recess in the magazine well, slides into a recess in the magazine when the magazine is placed in the magazine well, holds the magazine in place while the firearm is in use, and can be combined with other components to be actuated to 'lift[] from the recess in the magazine' to release the magazine. Appx15469 (citing '845 Patent at 2:35-53, 5:5-47, 6:18-46; Appx15501-15508).

Evolusion's attorney argument and citation to various testimony may describe how a factory magazine catch bar works to hold and release a magazine. But the evidence cited by Evolusion fails to describe how the factory-installed

magazine catch bar performs substantially the same function, in substantially the same way, to achieve substantially the same result as the non-factory magazine catch bar. Appx15501-155508. Evolusion bears the burden to prove that the factory-installed or "unmodified" magazine catch bar meets the function-way-result test of the non-factory installed or "modified" magazine catch bar. Evolusion had many opportunities to produce such evidence via expert reports or otherwise but failed to do so. Accordingly, on the record before it the district court properly granted Juggernaut's motion for summary judgment of non-infringement under the doctrine of equivalents. Accordingly, the judgment of the district court should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: September 8, 2021

Respectfully submitted,

/s/ Gregory Perrone
Gregory Perrone
BRAXTON PERRONE, PLLC
5 Cowboys Way, Suite 300
Box 32
Frisco, TX 75034
Telephone: (469) 814-0028
Facsimile: (469) 814-0023

Attorneys for Appellee,
JUGGERNAUT TACTICAL, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-1963, -1987

**Short Case Caption:** Evolusion Concepts, Inc. v. Hoc Events, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 9295 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 09/08/2021

Signature: /s/ Gregory Perrone

Name: Gregory Perrone

Save for Filing