**2021-1963, -1987**

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

EVOLUSION CONCEPTS, INC.,
*Plaintiff-Appellant,*

v.

HOC EVENTS, INC., dba SUPERTOOL USA,
*Defendant.*

**Appeal from the United States District Court for the Central District of California in No. 2:19-cv-02736-JLS-DFM, Judge Josephine L. Staton.**

EVOLUSION CONCEPTS, INC.,
*Plaintiff-Appellant,*

v.

JUGGERNAUT TACTICAL, INC.,
*Defendant-Appellee.*

**Appeal from the United States District Court for the Central District of California in No. 8:18-cv-01378-JLS-DFM, Judge Josephine L. Staton.**

## REPLY BRIEF FOR APPELLANT EVOLUSION CONCEPTS, INC.

TREVOR Q. CODDINGTON, PH.D.
INSIGNE PC
701 Palomar Airport Road
Suite 230
Carlsbad, CA 92011
(858) 227-6633

ALLEN M. SOKAL
INSIGNE PC
701 Palomar Airport Road
Suite 230
Carlsbad, CA 92011
(202) 297-2479

October 7, 2021

*Attorneys for Appellant Evolusion Concepts, Inc.*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

I. THE COURT ERRONEOUSLY CONSTRUED "MAGAZINE CATCH BAR" IN THE ASSERTED PRODUCT CLAIMS AS EXCLUDING A "FACTORY INSTALLED MAGAZINE CATCH BAR" ........................................................................................ 4

A. The Intrinsic Evidence Does Not Support the Court's Construction........ 4

B. The Extrinsic Evidence Not Support the Court's Construction ............. 18

II. IF "MAGAZINE CATCH BAR" DOES NOT LITERALLY READ ON FACTORY-INSTALLED MAGAZINE CATCH BARS, THE COURT ERRED IN GRANTING SUMMARY JUDGMENT OF NONINFRINGEMENT AND DENYING SUMMARY JUDGMENT OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS........................................................................... 22

CONCLUSION ....................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
350 F.3d 1365 (Fed. Cir. 2004) ....................10, 11

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011) ....................8, 15

*Alloc, Inc. v. International Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003) ....................15

*Astrazeneca AB v. Mutual Pharm. Co.*,
384 F.3d 1333 (Fed. Cir. 2004) ....................11

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004) ....................10, 19

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ....................14

*Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*,
998 F.3d 917 (Fed. Cir. 2021) ....................24

*Fin Control Sys. Pty Ltd. v. OAM Inc.*,
265 F.3d 1311 (Fed. Cir. 2001) ....................17, 18

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
909 F.2d 1464 (Fed. Cir. 1990) ....................14

*Johnson & Johnston Associates v. R.E. Service Co*.,
285 F.3d 1046 (Fed. Cir. 2002) ....................23, 24

*Microsoft Corp. v. Multi-Tech Sys.*,
357 F.3d 1340 (Fed. Cir. 2004) ....................15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir 2005) (en banc) .................................................. *passim*

*Phonometrics, Inc. v. N. Telecom, Inc.*,
133 F.3d 1459 (Fed. Cir. 1998) ........................................................................ 18

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
299 F.3d 1313 (Fed. Cir. 2002) .............................................................. 11, 12, 15

*Thorner v. Sony Computer Entertainment America LLC,*
669 F.3d 1362 (Fed. Cir. 2012) ............................................................ 8, 9, 13, 15

*Toro Co. v. White Consol. Indus.,*
199 F.3d 1295 (Fed. Cir. 1999) ........................................................................ 15

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ............................................................... 2, 7, 8, 9

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) .......................................................................... 10

## INTRODUCTION

The issue on appeal is whether the district court erroneously granted summary judgment of noninfringement and denied summary judgment of infringement by construing “magazine catch bar” in the asserted claims as excluding a factory-installed magazine catch bar. Evolusion’s opening brief explains why, under this Court’s claim construction jurisprudence, the district court clearly erred as a matter of law. Most importantly, nothing in the intrinsic evidence even approaches a clear redefinition, disclaimer, or disavowal of the ordinary meaning of “magazine catch bar,” which by definition includes both an OEM or factory-installed magazine catch bar and a non-OEM magazine catch bar. On the contrary, in describing the products of the invention—the subject of the asserted claims—the specification’s written description consistently uses broad language when discussing “magazine catch bar” or simply “magazine catch.”

The court nevertheless reasoned that (1) a single sentence in the SUMMARY OF THE INVENTION and (2) unasserted method claim 15 require construing "magazine catch bar" as excluding a factory-installed magazine catch bar. The single sentence the court found conclusive is, “The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention.” Appx13 (quoting Appx66 (’845 patent at col. 2, ll. 55-58)). "Magazine catch bar," the court concluded, must necessarily

exclude the standard OEM magazine catch assembly, which includes an OEM magazine catch bar.

The court relied on *Verizon Servs. Corp. v. Vonage Holdings Corp.*, which states that "[w]hen a patent thus describes the features of the 'present invention' *as a whole*, this description limits the scope of the invention." 503 F.3d 1295, 1308 (Fed. Cir. 2007) (emphasis added). But the patent describes the product inventions of the asserted claims consistently and as a whole as requiring, *inter alia*, simply "a magazine catch bar." And the court similarly relied on unasserted method claim 15, which recites removing the factory-installed magazine release button assembly but then installing simply "a magazine catch bar." Although the product claims do not recite removing the factory-installed magazine release button assembly or even mention any factory-installed part, the court reasoned that since it construed "magazine catch bar" in unasserted method claim 15 as excluding a factory-installed magazine catch bar, it had to construe the same term appearing in the product claims the same way.

The single sentence the court and Juggernaut rely on so heavily, however, does not describe the claimed products. As noted above and in Evolusion's opening brief, the patent consistently describes the products as including simply "a magazine catch bar" in both the written description and the asserted claims. And the single

sentence the court and Juggernaut rely on describes the method step of "installing the invention" and does not preclude, much less clearly disavow or disclaim, installing an OEM magazine catch bar. Nor does unasserted method claim 15. Moreover, if the court and Juggernaut were correct that "a magazine catch bar" must have the same construction in product claims 1 and 8 and in unasserted method claim 15, that construction should be its ordinary and customary meaning, not the narrower meaning the district court applied, because the intrinsic evidence includes no clear redefinition, disclaimer, or disavowal of the ordinary meaning.

Juggernaut attempts to support the district court's departure from the ordinary meaning of "magazine catch bar" with arguments and evidence that the district court did not use or rely on. For example, many of its arguments rely heavily on extrinsic evidence, which the district court, appropriately, did not rely on. And that extrinsic evidence not only cannot overcome the controlling intrinsic evidence but fails to account for contrary extrinsic evidence. Juggernaut also distorts arguments in Evolusion's opening brief to create strawmen that it proceeds to knock down.

Evolusion's opening brief further explains how, if "magazine catch bar" does not read literally on a factory-installed magazine catch bar, the district court erred in granting summary judgment of no infringement under the doctrine of equivalents, especially by failing even to consider the Supreme Court's function, way, result test.

Juggernaut again relies on arguments and evidence that the district court's order does not include, and Juggernaut distorts the court's erroneous reasoning that the order does include to attempt to shield the court's errors.

Thus, Evolusion's opening brief explains in detail why the district court erred as a matter of law in granting Juggernaut's motion for summary judgment of noninfringement and denying Evolusion's motion for summary judgment of infringement. This reply brief will respond to Juggernaut's attempts to rebut those explanations.

## I. THE COURT ERRONEOUSLY CONSTRUED "MAGAZINE CATCH BAR" IN THE ASSERTED PRODUCT CLAIMS AS EXCLUDING A "FACTORY INSTALLED MAGAZINE CATCH BAR"

### A. The Intrinsic Evidence Does Not Support the Court's Construction

Juggernaut's SUMMARY OF ARGUMENT makes clear Juggernaut's main argument: The single sentence that Juggernaut and the district court emphasize (the "invention is" sentence (Juggernaut's Brief ("JB") at 11)) "defines the invention" as a *device* that requires removing the standard OEM magazine catch assembly and therefore excludes an OEM or factory-installed magazine catch bar. JB at 8. The "invention is" sentence refers to a device, not a method, the argument continues, because it ends with "installing the invention," and "[t]he user would not install 'the method' as Evolusion proposes." *Id*. Furthermore, since the sentence preceding the

"invention is" sentence states, "The invention is a *device* which is installed as a permanent component of the firearm," "these sentences . . . limit the scope of the entire patent and not just claim 15." *Id*. at 8-9.

That argument, repeated throughout Juggernaut's brief, especially in section II(A), reveals a fundamental misunderstanding of the inventions that are disclosed and claimed in the '845 patent. Evolusion does not propose that one installs the method, but rather that one installs a product invention. Juggernaut's fundamental misunderstanding is its belief that the patent discloses and claims a single invention. The claims define the inventions, *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir 2005) (en banc) ("It is a 'bedrock principle' of patent law that "the claims of a patent define the invention"), and the '845 patent claims at least the three inventions of claims 1, 8, and 15. The paragraph that the "invention is" sentence appears in describes part of the method invention of claim 15, not the product inventions of claims 1 and 8.

But the three inventions are not unrelated. The method invention of unasserted claim 15 comprises a series of steps for removing the factory-installed magazine release button assembly followed by a series of steps for installing the product invention of claim 8 to arrive at the product invention of claim 1, namely a firearm with a fixed magazine. The paragraph that the "invention is" sentence

appears in describes only the method steps of claim 15 for removing the magazine release button assembly. It does not describe the structural limitations of either claimed product invention, both of which require, as structural limitations and not method steps, at least the combination of a magazine catch bar and an upper tension bar. Thus, the paragraph that the "invention is" sentence appears in provides:

> The invention is a device which is installed as a permanent component of the firearm. The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention. To remove the magazine catch assembly a person can depress the magazine release button. The user can then rotate the free end of the magazine catch in a counterclockwise motion. This motion unthreads the magazine catch from the magazine release button. Once the magazine catch is completely unthreaded, all parts of the factory installed assembly can be removed from the lower receiver.

Appx66 (col. 2, ll. 54-64). Comparing lines 3-15 of unasserted claim 15 removes any doubt that the paragraph that the "invention is" sentence appears in describes only the method steps of claim 15 for removing the magazine release button assembly and not the products of asserted claims 1 and 8:

> Removing the factory installed magazine release button
> assembly
> Said removal comprising the steps of
> depressing the magazine release button to a sufficient
> depth to permit the factory installed magazine
> catch bar to extend beyond the magazine well of the
> lower receiver,
> rotating the factory installed magazine catch bar in a
> counterclockwise fashion until the factory installed

> magazine catch bar is unthreaded from the factory
> installed screw end of the magazine release button,
> removing all parts of the factory installed magazine
> release button assembly

Appx69 (col. 8, ll. 49-61).

Moreover, the paragraph that the "invention is" sentence appears in is clearly distinct from the structure recited in asserted product claims 1 and 8:

> 1. A firearm with a fixed magazine comprising
> a lower receiver having a magazine well configured to
> receive a magazine with a side-locking recess with a
> recess in the magazine well
> a magazine catch bar securely attached to the firearm, said
> magazine catch bar resting within the magazine side
> locking recess
> an upper tension bar which extends towards and contacts the upper receiver.

Appx69 (col. 7, ll. 27-35).

> 8. A device for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising
> A magazine catch bar securely attached to the lower receiver of said firearm, said magazine catch bar resting within the side-locking recess
> An upper tension bar which extends towards and contacts the upper receiver.

Appx69 (col. 8, ll. 4-10).

Juggernaut's argument that the "invention is" sentence defines the patent's sole invention and limits "the entire patent" is an obvious attempt to force the facts to fit into the statement in *Verizon Servs. Corp. v. Vonage Holdings Corp.* that

"[w]hen a patent thus describes the features of the 'present invention' *as a whole*, this description limits the scope of the invention." 503 F.3d 1295, 1308 (Fed. Cir. 2007) (emphasis added). But neither the "invention is" sentence nor the paragraph that it appears in describes the product inventions. Instead, the great majority of the written description, with repeated references to "the invention" or "the present invention," describes the products of the invention, using exclusively the generic term "magazine catch bar" or "magazine catch." The entire DETAILED DESCRIPTION is devoted to only the product inventions without mentioning the method or mentioning, much less excluding from "a magazine catch bar," "a factory-installed magazine catch bar." *See* the DETAILED DESCRIPTION, Appx67-69 (col. 4, l. 44-col. 7, l. 25). *See also* in the SUMMARY OF THE INVENTION Appx66-67 (col. 2, ll. 65-col. 3, ll. 1-47). That puts this case squarely into the exceptions to *Verizon* described in *Absolute Software, Inc. v. Stealth Signal, Inc.* 659 F.3d 1121, 1136-37 (Fed. Cir. 2011): "such as where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent."

A highly analogous case that is far more applicable to the present case than *Verizon* is *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362 (Fed. Cir. 2012). As in this case, the district court construed a claim term, "actuators

attached to said pad," more narrowly than its ordinary meaning, leading to a judgment of noninfringement. Specifically, the district court held that "attached" was limited to attached to the outside of the pad, excluding attached to its interior, i.e. embedded. The court reasoned as follows:

> [T]he embodiments in the specification consistently use the term "attached" to indicate affixing an actuator to the outer surface of an object and use the word "embedded" when referring to an actuator inside an object. For additional support for the notion that attached and embedded have different meanings, the court pointed to claim 1 which uses the word "attached" and dependent claim 10 which uses the word "embedded."

669 F.3d at 1365. Claim 10 depended on claim 9, which depended on claim 1, and therefore recited both "attached" and "embedded," just as unasserted method claim 15 in this case recites both "magazine catch bar" and "factory installed magazine catch bar." This Court reversed the judgment of noninfringement.

*Thorner* has obvious parallels to this case. The defendant, whose accused product had embedded actuators, argued for the district court's narrow construction of "attached," which excluded actuators attached to the interior of the pad, i.e. "embedded," while the plaintiff argued for the ordinary meaning, encompassing actuators attached to both the outer surface of and inside the pad, i.e. "embedded." In the present case, "magazine catch bar" corresponds to "attached," and "factory installed magazine catch bar" corresponds to "embedded." This Court rejected the

district court's narrow claim construction and adopted instead the broader ordinary meaning, and its explanation of the law and application of the law to the facts are highly instructive for this case.

The Court observed first that there are only two exceptions to the rule that claim terms are given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id*. (citing *Vitronics Corp. v. Conceptronic, Inc.,*90 F.3d 1576, 1580 (Fed.Cir.1996)). The Court then proceeded to explain the high standard for proving those exceptions.

The Court first addressed the standard for proving the redefining of a claim term, i.e. lexicography:

> To act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning. . . . It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must "clearly express an intent" to redefine the term. . . . "[T]he inventor's written description of the invention, for example, is relevant and controlling insofar as it provides *clear lexicography* ..." *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed.Cir.2004) (emphasis added). For example, in *3M Innovative Properties Co. v. Avery Dennison Corp.,* we held that the patentee acted as its own lexicographer when the specification stated: "'Multiple

> embossed' means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing." 350 F.3d 1365, 1369, 1371 (Fed.Cir.2004). Similarly, we limited a patentee to particular examples of solubilizers when it stated in the specification that "[t]he solubilizers suitable according to the invention *are defined below.*" *Astrazeneca AB v. Mutual Pharm. Co.,* 384 F.3d 1333, 1339 (Fed.Cir.2004).

*Id*. at 1365-66 (citations omitted). Neither the "invention is" sentence nor anything else in the written description provides such clear lexicography.

The Court then remarked that the standard for proving a disavowal of claim scope "is similarly exacting." *Id*. at 1366.

> "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed.Cir.2002); . . . For example, in *SciMed,* the patentee described two different types of catheters in the prior art, those with dual lumens (side-by-side) and those with coaxial lumens. 242 F.3d at 1339. . . . [T]he specification stated: "The intermediate sleeve structure defined above [coaxial design] is the basic sleeve structure for *all embodiments of the present invention contemplated and disclosed herein.*" *Id.* at 1343 (emphasis in original). This court held that collectively this amounted to disavowal of the dual lumen design.
>
> . . . It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer.
>
> It is the claims that define the metes and bounds of the patentee's invention. *Phillips,* 415 F.3d at 1313. The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary

> meaning unless the patentee explicitly redefines the term or disavows its full scope.

669 F.3d 1366-67 (citations omitted).

Again, neither the "invention is" sentence nor anything else in the written description expresses such a manifest exclusion. The description of the method as removing the standard OEM magazine catch assembly and installing a magazine catch bar and an upper tension bar does not manifestly express excluding from "magazine catch bar" an OEM magazine catch bar.

Thus, after explaining the two possible exceptions to construing a claim term to have its ordinary meaning, this Court rejected the defendant's (Sony's) arguments for a narrower construction, which are virtually identical to Juggernaut's arguments:

> Sony responds that the patent clearly identified two different connections, "attached to" and "embedded within." It argues that in every instance where the specification uses the term "attached," it refers to an attachment to an outer surface. Conversely, in every embodiment where the actuator is placed inside a housing, the specification uses the term "embedded." . . .
>
> . . . We hold that this does not rise to the level of either lexicography or disavowal. Both exceptions require a clear and explicit statement by the patentee. *CCS Fitness,* 288 F.3d at 1366; *Teleflex,* 299 F.3d at 1325. It is not enough that the patentee used the term when referencing an attachment to an outer surface in each embodiment. . . . We conclude that the term attached should be given its plain and ordinary meaning. The specification does not redefine attached nor is there any disavowal.

> The fact that the specification uses the two terms "attached" and "embedded" as alternatives does not require a different result. . . . The plain and ordinary meaning of embedded, "attached within," is narrower than "attached." Hence it makes sense that the applicant would want to use embedded when it meant to explicitly claim attached to the inside only. That does not mean the word attached automatically means attached to the external surface, as opposed to the broader plain meaning—attached to either the interior or exterior.
>
> . . . Simply referring to two terms as alternatives or disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term.

669 F.3d 1367-68 (citations omitted).

So too, Juggernaut argues that all embodiments use non-OEM magazine catch bars and that the written description and unasserted method claim 15 use magazine catch bar and OEM magazine catch bar as alternatives. As in *Thorner,* because there is no clear and explicit statement in the written description, "this does not rise to the level of either lexicography or disavowal." *Id.* at 1367.

Consequently, even the method, as disclosed and claimed, of making the product of claim 1 by installing the device of claim 8, when it recites "Installing a magazine catch bar," reads on and does not exclude installing a factory-installed or OEM magazine catch bar. If the applicants intended to exclude OEM magazine catch bars, they could have clearly done so expressly. They did not. "Magazine catch bar" therefore should be given its ordinary and customary meaning, to which Juggernaut agreed during the Markman proceedings. *See* Juggernaut's Opening

Claim Construction Brief (Appx1043) ("Neither party has argued that the terms lower receiver and magazine catch bar require Claim Construction because these terms have been well-known in the art for decades."). Nowhere does the patent clearly disavow or disclaim the ordinary meaning of "a magazine catch bar."

Juggernaut nevertheless argues that in claim 15, a difference in antecedent basis between "the factory installed magazine release button assembly" and "a magazine catch bar" means, "These terms by definition refer to different and distinct items. The term 'magazine catch bar' must necessarily exclude a factory installed magazine catch bar." JB at 24. But Juggernaut cites no authority for that necessity, and there is no antecedent basis in claim 15 for "a magazine catch bar." It is simply a broader term than "factory installed magazine release bar" and therefore reads on magazine release bars that are and are not factory-installed. Moreover, claims 1 and 8, unlike claim 15, are product claims reciting only structure and as such encompass any product with the recited structure regardless of how it is made or installed. *Cf. Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) ("To infringe an apparatus claim, the device must meet all of the structural limitations."); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("Apparatus claims cover what a device *is*, not what a device *does.*").

Juggernaut cites three Federal Circuit cases—all decided before *Verizon*, *Absolute*, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir 2005) (en banc), and *Thorner*—as construing claims to require features that are disclosed to be central to the functioning of the claimed invention, disclosed to constitute the very character of the invention, or disclosed to be an important configuration while no other configurations were disclosed. JB at 11-12 (citing *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1351-52 (Fed. Cir. 2004), *Alloc, Inc. v. International Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003), and *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1300– 01 (Fed. Cir. 1999). Such subjective determinations obviously depend on the particular facts of each case, and in this case, as disclosed and claimed, a non-OEM magazine catch bar is not central to the functioning of the product inventions, the very character of the product inventions does not require a non-OEM magazine catch bar, and the patent does not describe employing a non-OEM magazine catch bar magazine catch bar as important to the product inventions but rather consistently describes employing simply "a magazine catch bar." Moreover, the *Alloc* opinion, like *Thorner*, observes, "it is impermissible to read the one and only disclosed embodiment into a claim without other indicia that the patentee so intended to limit the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed.Cir.2002)." *Alloc*, 342 F.3d at 1370 (Fed. Cir. 2003).

In support of its argument that "the invention is" sentence limits the entire patent, in particular the asserted product claims, Juggernaut criticizes Evolusion, using the terms "imaginary and circuitous line in the Summary of the Invention," "arbitrary," and "absurd," in asserting that,

> Evolusion contends that paragraphs 1-6 [of the SUMMARY OF THE INVENTION] (Appx00066, col. 2, ll. 3-53) and 8-9 (Appx00066-00067, col. 2, ll. 3-47) are devoted solely to the device, whereas paragraphs 7 (which conveniently has the "invention is" language) (Appx00066, col. 2, ll. 54-64) and 10 (Appx00067, col. 3, line 47 – col. 4, line 27) are devoted solely to the method.

JB at 15. Contrary to that assertion, made without citing where that contention appears in Evolusion's opening brief, the opening brief does *not* say all of paragraphs 1-6 of the SUMMARY OF THE INVENTION are devoted solely to the device. Instead, Evolusion quoted paragraph 1 in its entirety and then noted that the next paragraph of the SUMMARY OF THE INVENTION that describes a product is paragraph 8. *See* opening brief at 12-13. In any event, only two paragraphs of the summary of the invention, and none of the DETAILED DESCRIPTION, discuss and are dedicated to the method; they provide the total and only support in the entire patent for unasserted method claim 15.

The salient point is that besides "the invention is" paragraph, only one other paragraph in the written description portion of the entire patent, paragraph 10 of the SUMMARY OF THE INVENTION, describes the method invention. Describing

"the invention is" sentence as limiting the invention as a whole misses the mark even further than describing the dog's wagging tail as limiting the dog as a whole. The sentence does not even describe the product inventions but only partially describes the method invention, namely the method of installing one of the product inventions to make the other product invention.

Juggernaut further argues that because "magazine catch bar" in unasserted method claim 15 allegedly excludes an OEM magazine catch bar, the same term must receive the same construction in asserted product claims 1 and 8. Juggernaut repeats its cropped quotation from *Fin Control Sys. Pty Ltd. v. OAM Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001), to support its argument that the construction of "magazine catch bar" is the same in all claims of the patent "unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." JB at 27-28. Juggernaut describes as "nonsense" Evolusion's argument that *Fin Control* applied that elevated standard to only terms appearing more than once in the same claim rather than terms appearing in different claims. In fact, however, only one claim in *Fin Control* was at issue, claim 13, and the issue was whether the same or similar terms appearing in different portions of that claim had to be given the same construction. 265 F.3d at 1316-18. This Court simply generalized the presumption that applies to any and all claims that have

repeated terms: "[W]e begin with the presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." 265 F.3d at 1318 (citing *Phonometrics, Inc. v. N. Telecom, Inc.,* 133 F.3d 1459, 1465 (Fed. Cir. 1998)).

This Court described a less exacting standard in *Phillips*: "Because claim terms are *normally* used consistently throughout the patent, the usage of a term in one claim can *often* illuminate the meaning of the same term in other claims." 415 F.3d at 1314) (emphasis added). As noted in Evolusion's opening brief, *Phillips*'s general statement did not address this case, where the patent describes and claims two different statutory classes of invention supported by very different descriptions in separate and distinct portions of the written description. Opening brief at 37-38. Moreover, for the reasons given above, "magazine catch bar" should be given its ordinary meaning in unasserted method claim 15 as well as asserted product claims 1 and 8.

**B. The Extrinsic Evidence Does Not Support the Court's Construction**

Juggernaut attempts to bolster its argument by placing heavy reliance on extrinsic evidence, beginning with the deposition testimony of Mr. Harris, the co-inventor and owner of Evolusion. JB at 19-20 (citing Appx15057). But extrinsic

evidence cannot trump the intrinsic evidence described above. *Phillips*, 415 F.3d at 1317-19. Extrinsic evidence "is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id*. at 1317 (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed.Cir.2004)). "[A] court should discount any expert [or inventor] testimony 'that is clearly at odds with the claim construction mandated by the claims themselves [and] the written description . . . .'" *Id*. at 1318. Although

> expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field

*id*., and a district court has discretion to use such extrinsic evidence, *id.* at 1319, none of those rationales applies here, and the district court did not choose to use the extrinsic evidence Juggernaut relies on.

Moreover, examining the full context of Mr. Harris's testimony demonstrates that it does not support Juggernaut's argument. Mr. Harris was asked, "Did [you] invent the magazine catch?" Appx15057. Of course he did not, since the magazine catch, or magazine catch bar, has been well known for decades. Accordingly, he responded, "My *modified* magazine catch." *Id*. (emphasis added).

He did invent a modified magazine catch, to which some of the dependent claims, but not asserted claims 1 and 8, are directed. *See Phillips,* 415 F.3d at 1314 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.") That is confirmed by the following questions and answers:

Q. Where in claim 1 does it say "modified"?

A. It does not.

Q. So, then, why are you introducing the term "modified"?

A. Okay. I rescind it.

Q. Why did you include it?

A. Because mine is modified. My magazine catch is modified from an OEM magazine catch.

Q. So does an OEM magazine catch still infringe your patent?

MR. BLAZER: Objection. Legal conclusion.

A. Not that I'm aware of.

Appx15057. All those answers were correct. A magazine catch bar, OEM or non-OEM, standing alone, does not infringe, but infringes only in combination with the other limitations of the asserted claims.

Continuing with extrinsic evidence that the district court did not rely on, Juggernaut argues that Mr. Harris and Evolusion's technical expert "agreed that ['magazine catch bar'] does not have a well-known meaning in the industry." JB at 20 (citing Appx15053 and Appx15066). In fact, the evidence shows that it does have a well-known meaning, but even if that were not so, it would not mean that it did not have an ordinary meaning. Mr. Harris testified that the generally used term is "magazine catch." Appx15052. The patent uses both terms. E.g. compare Appx66 (col. 2, ll. 59-62) with Appx69 (col. 8, ll. 56-59). As to Evolusion's technical expert, he was asked whether there was an understood meaning of magazine catch bar. The exhibit Juggernaut included in the appendix does not provide his complete answer, and the ambiguous partial answer that it does provide begins with "I think that there is a standard OEM catch bar . . . ." Appx15066. Beyond that, however, Juggernaut's opening claim construction brief states, "Neither party has argued that the terms lower receiver and magazine catch bar require Claim Construction because these terms have been well-known in the art for decades." Appx1043. And Juggernaut's own expert witness acknowledged that the term has been "in public use for decades." Appx15507-15508.

Ironically, in connection with unasserted method claim 15 Juggernaut describes as gymnastics and nonsense the notion that one would remove the factory-

installed magazine release button assembly, which includes the OEM magazine catch bar, "and then without any intervening steps, install the same magazine catch bar," Juggernaut thereby recognizing that the ordinary meaning of "magazine catch bar" encompasses an OEM magazine catch bar. JB at 27. What is ironic is Juggernaut's reason for dismissing Supertool's removing the factory-installed magazine release button assembly "and then without any intervening steps, install[ing] the same magazine catch bar," namely because Supertool's installing "the OEM magazine catch does not change what is in the '845 Patent." *Id*. Nor does Juggernaut's extrinsic evidence.

## II. IF "MAGAZINE CATCH BAR" DOES NOT LITERALLY READ ON FACTORY-INSTALLED MAGAZINE CATCH BARS, THE COURT ERRED IN GRANTING SUMMARY JUDGMENT OF NONINFRINGEMENT AND DENYING SUMMARY JUDGMENT OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Evolusion's opening brief explains why the district court erred in its rulings regarding the doctrine of equivalents. *See* opening brief at 39-42. Most importantly, the court failed to perform the function, way, result test and failed to consider that a magazine catch bar, however named, holds a magazine in place by resting within the magazine side-locking recess. Indeed, the district court effectively noted that the parties agree that Juggernaut's OEM magazine catch bar in the claimed combination performs the same function, way, and result; i.e. it noted that the parties "agree that

an AR-15 with a Hellfighter Mod Kit installed . . . may have a magazine with a recess in its side; that a magazine catch may rest within that recess in the side of the magazine, locking the magazine in place; that it may have a magazine well . . . ." Appx8 (citations omitted). And the court proclaimed that "If ["magazine catch bar"] includes factory-installed magazine catch bars, the Accused Products infringe." Appx9. In other words, apart from its name, which is to say apart from its previous service in a firearm with a fixed magazine, the factory-installed magazine catch bar in the accused products perfectly performs the function, way, and result of the claimed magazine catch bar.

Juggernaut begins its response by quoting Evolusion's argument out of context and attempting to convert the district court's ruling—that Evolusion dedicated to the public encompassing an OEM magazine catch bar in the claimed combination by disclosing and declining to claim that subject matter—into a ruling relying on the vitiation doctrine, which appears nowhere in the court's order. JB at 33-34. The omitted context is the court's reasoning that was the premise for the argument that Juggernaut quoted. Evolusion's opening brief supplied the missing context by quoting the court's reasoning (absent from Juggernaut's brief): "'When a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public.' *Johnson & Johnston Associates Inc. v.*

*R.E. Service Co., Inc*., 285 F.3d 1046, 1054 (Fed. Cir. 2002)." Opening brief at 24 (citing Appx19). Evolusion responded that the court clearly erred because the patent does not disclose and therefore does not dedicate to the public a factory-installed magazine catch bar in the claimed combination. Opening brief at 25. Juggernaut does not respond to that argument.

Instead, Juggernaut argues that in *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.***,** 998 F.3d 917, 923 (Fed. Cir. 2021), this Court explained that the vitiation doctrine ensures that the application of the doctrine of equivalents does not "effectively eliminate [a claim] element in its entirety." JB at 34. Besides that the district court did not rely on vitiation or cite *Edgewell*, finding that an OEM magazine catch bar is equivalent to the claimed magazine catch bar manifestly does not eliminate that claim element. Moreover, this Court in *Edgewell* reversed summary judgment of noninfringement based on vitiation. Its explanation applies equally to this case:

> [T]he district court erred in evaluating this element as a binary choice between a single-component structure and a multi-component structure, rather than evaluating the evidence to determine whether a reasonable juror could find that the accused products perform substantially the same function, in substantially the same way, achieving substantially the same result as the claims.

998 F.3d at 924. In this case also, the district court erred in evaluating "magazine catch bar" as a binary choice between an OEM and a non-OEM magazine catch bar

rather than evaluating the evidence to determine whether a reasonable juror could find that the accused products perform substantially the same function, in substantially the same way, achieving substantially the same result as the asserted claims.

Finally, Juggernaut argues that the district court was correct to grant summary judgment of no infringement under the doctrine of equivalents because Evolusion offered no evidence to prove infringement under the doctrine of equivalents. JB at 37-41. But Evolusion did introduce evidence of infringement under the doctrine of equivalents, and the court did not rely on a lack of evidence in its order. Moreover, as observed above, the court noted Juggernaut's agreement that the OEM magazine catch bar in the accused products performs the same function in the same way to obtain the same result as the claimed magazine catch bar.

As to additional evidence, Juggernaut admits that Evolusion cited evidence of infringement under the doctrine of equivalents in its motion for summary judgment. JB at 40. That evidence, consisting of the testimony of seven witnesses, including Juggernaut's expert witnesses, demonstrates that the OEM magazine catch bar in both an accused firearm with a fixed magazine and a firearm with a detachable magazine performs the same function in the same way to obtain the same result as the claimed magazine catch bar. Appx15501-15508.

Evolusion submits that if "magazine catch bar" does not literally read on a factory-installed magazine catch bar, the district court erred as a matter of law in granting summary judgment of noninfringement under the doctrine of equivalents and in denying summary judgment of infringement under the doctrine of equivalents.

# CONCLUSION

In view of the foregoing and Evolusion's opening brief, Evolusion respectfully submits that in the *Juggernaut* appeal the Court should reverse the district court's order granting summary judgment of noninfringement and denying summary judgment of infringement and remand for rulings on the motions for summary judgment of validity and invalidity, and in the *Supertool* appeal, the Court should reverse the district court's order denying Evolusion's application for default judgment.

Dated: October 7, 2021

Respectfully submitted,

By: /s/Allen Sokal
ALLEN SOKAL
INSIGNE PC
701 Palomar Airport Road
Suite 230
Carlsbad, CA 92011
Telephone: (202) 297-2479
Facsimile: (858) 408-4422

TREVOR Q. CODDINGTON
INSIGNE PC
701 Palomar Airport Road
Suite 230
Carlsbad, CA 92011
Telephone: (858) 227-6635
Facsimile: (858) 408-4422

Attorneys for Appellant,
EVOLUSION CONCEPTS, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-1963

**Short Case Caption:** Evolusion Concepts, Inc. v. Hoc Events, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,105 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.
- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 10/07/2021

Signature: /s/ Allen M. Sokal

Name: Allen M. Sokal