**2021-1963 and 2021-1987**

# United States Court of Appeals
# for the Federal Circuit

EVOLUSION CONCEPTS, INC.

*Plaintiff-Appellant,*

*v.*

HOC EVENTS, INC., DBA SUPERTOOL USA,

*Defendant.*

*On Appeal from the United States Court for the Central District of California in No. 2:19-cv-02736-JLS-DFM, Judge Josephine L. Staton*

EVOLUSION CONCEPTS, INC.

*Plaintiff-Appellant,*

*v.*

JUGGERNAUT TACTICAL, INC.,

*Defendant-Appellee.*

*On Appeal from the United States Court for the Central District of California in No. 8:18-cv-01378-JLS-DRM, Judge Josephine L. Staton*

**JUGGERNAUT TACTICAL, INC.'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC***

CHRISTIAN JOHN HURT
DAVIS FIRM, P.C.
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
churt@davisfirm.com

GREGORY PERONE
BOBBY BRAXTON
BRAXTON PERRONE, PLLC
5 Cowboys Way
Suite 300, Box 32
Frisco, Texas 75034
perrone@braxtonperrone.com
braxton@braxtonperrone.com

*Counsel for Appellee Juggernaut Tactical, Inc.*

CORRECTED: February 14, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 21-1987 |
| **Short Case Caption** | Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc. |
| **Filing Party/Entity** | JUGGERNAUT TACTICAL, INC. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/14/2021

Signature: /s/ Gregory Perrone

Name: Gregory Perrone

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| JUGGERNAUT TACTICAL, INC. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| One LLP | Uleses C. Henderson, Jr. | |
| Hankin Patent Law, APC | Marc E. Hankin | Anooj Patel |
| Bobby W. Braxton | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Evolusion Concepts, Inc. v. Hoc Events, Inc. Fed. Cir. Case No. 21-1963 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

iii

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................v

STATEMENT OF COUNSEL ..............................................................1

INTRODUCTION ...............................................................................2

BACKGROUND .................................................................................3

    I.     The '845 Patent ........................................................3

    II.    The District Court Proceedings .............................5

    III.   The Panel Decision ................................................7

ARGUMENT .......................................................................................8

I.    Panel Rehearing is Appropriate ......................................8

    A.    The Panel Overlooked The Established Line of "The Invention Is" Precedent ...............................9

    B.    The Panel Overlooked the Fact That Juggernaut's Products Do Not Remove the Magazine Catch Bar ...........................11

II.   *En Banc* Consideration is Required to Avoid Upsetting the Public's Settled Expectations About the Scope of Countless Patents .........................14

III.  CONCLUSION ...........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AstraZeneca AB v. Mylan Pharm. Inc.*,
  No. 2021-1729, --- F.4th ---, 2021 U.S. App. LEXIS 36127
  (Fed. Cir. 2021)................................................................17

*Beckson Marine v. Nfm, Inc.*,
  292 F.3d 718 (Fed. Cir. 2002) ......................................13

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004) ......................................10

*Campbell Soup Co. v. Gamon Plus, Inc.*,
  No. 2020-2322, 2021 U.S. App. LEXIS 24763
  (Fed. Cir. Aug. 19, 2021)..............................................10

*Forest Labs., LLC v. Sigmapharm Labs., LLC*,
  918 F.3d 928 (Fed. Cir. 2019) ...................... 1, 9, 10, 16

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016) .................. 1, 10, 15, 16

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
  452 F.3d 1312 (Fed. Cir. 2006) .................. 1, 10, 15, 16

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2015) ............................. 1, 16

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
  717 F.3d 929 (Fed. Cir. 2013) ......................................1, 9

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
  659 F.3d 1369 (Fed. Cir. 2011) ....................................14

*TriStrata, Inc. v. Microsoft Corp.*,
  594 Fed. Appx. 653 (Fed. Cir. 2014) ...........................10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ........................... *passim*

**Statutes & Other Authorities:**

Fed. R. Civ. P. 56(f) ................................................................. 14

U.S. Patent No. 8,756,845 ................................................... *passim*

# STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary

to the following decision(s) of the Supreme Court of the United States or the

precedent(s) of this court:

- *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2015) (en banc)

- *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006)

- *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007)

- *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929 (Fed. Cir. 2013)

- *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365 (Fed. Cir. 2016)

- *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928 (Fed. Cir. 2019)

Based on my professional judgment, I believe this appeal requires an answer

to one or more precedent-setting questions of exceptional importance:

1. When a patentee says that "the invention is" something—a phrase that appears in countless patents—is the interested public entitled to rely on that statement when determining the scope of the claims for that invention?

/s/ *Christian Hurt*
Christian Hurt
*Counsel for Petitioner*

1

## INTRODUCTION

It is established law that when a patentee says that "the invention is" something, the patentee is held to that statement absent compelling reasons. This rule is important because statements like "the invention" and "the present invention" are some of the most-used phrases in patent drafting. And the public is entitled to rely on those statements to determine the scope of a patentee's rights.

The Panel's precedential decision, reversing the District Court, did not follow that law and renders uncertain the boundaries of countless patents. The patent here expressly states what "the invention is," and that definition undisputedly matches each disclosed embodiment. That definition also matches the inventor's sworn testimony. The District Court found that the patent's definition of "the invention" provided "compelling support" to limit the claims in that manner and entered summary judgment of noninfringement.

The Panel reversed. It did not address the line of "the invention is" precedent from this Court. It instead issued a new plain-and-ordinary construction. And it then entered judgment of infringement—even though Juggernaut's accused product does not infringe under the Panel's explanation of its new construction.

Clarity on this important claim-construction issue warrants rehearing this case on the merits and review of the full Court. And fundamental due process requires at least vacating the judgment and remanding the case so Juggernaut can present its

2

noninfringement defense below.  For these reasons and those below, Juggernaut respectfully requests that this Court rehear this case.

## BACKGROUND

### I.    The '845 Patent

The Patent-in-Suit (U.S. Patent No. 8,756,845, referred to as "the '845 patent") relates to a technique to convert a firearm with a "detachable magazine" into one with a "fixed magazine."[1] '845 patent at 1:5-10.  A "detachable magazine" allows a user to fire the weapon until "the magazine is depleted, then simply release the magazine, insert a new magazine, and resume firing."  *Panel Op.* at 3 (citing '845 patent at 1:22–27).  "The standard semi-automatic rifle," per the patent, is "manufactured and sold with a detachable magazine."  '845 patent at 1:60-62.  A "fixed magazine," in contrast, "can be removed and replaced only by disassembling certain nonmagazine parts of the firearm, slowing the rate of fire."  *Panel Op.* at 3 (citing '845 patent at 1:50–53, 2:20–28).

The patent recites a specific technique to convert the firearm.  "A standard OEM[2] semi-automatic rifle contains a magazine catch assembly," which typically includes three parts, "a magazine catch, a spring, and magazine release button."  '845

---

[1] A "magazine" is the part of the firearm that feeds the ammunition. *See, e.g.*, '845 patent at Fig. 1 (showing magazine labeled as "40").

[2] "OEM" is an acronym for "original equipment manufacturer."

patent at 2:35-38.  The invention, as the patent explains, is to convert the firearm to

a fixed magazine firearm by "removing" the standard OEM magazine catch

assembly and "installing the invention":

> The invention is a device which is installed as a permanent
> component of the firearm.  The invention is a permanent
> fixture added to a semi-automatic firearm by removing the
> standard OEM magazine catch assembly and installing the
> invention.

'845 patent at 2:55-58.  The Patent similarly teaches that "invention 10" "is securely

placed in a recess in the magazine well 45 to hold the magazine 40 in place so that

it cannot be removed from the magazine well 45," as shown in Figure 1 (highlighting

added).  '845 patent at 2:65-67.



Additionally, the co-inventor testified that the term "magazine catch bar"

referred to a modified magazine catch bar.  When attempting to illustrate how claim

1 could be novel, Mr. Harris said that: "My - - my magazine catch is modified from

an OEM magazine catch."  Appx15057 (ll. 14-16).  The inventor contrasted the

patent's invention with the arrangement in Juggernaut's product, which utilizes an

un-modified OEM magazine catch bar and assembly.  Appx15057 (ll. 17-20) ("Q.

So does an OEM magazine catch still infringe your patent? . . . [Objection] The

Witness: Not that I'm aware of.").

The central issue in this case relates to the "magazine catch bar" term in view

of the description above.  In the case, Evolusion asserted independent claims 1 and

8.   Claim 8 recites the following:

> A device for converting a firearm with a detachable
> magazine into a firearm with a fixed magazine comprising
>
> A *magazine catch bar* securely attached to the lower
> receiver of said firearm, said magazine catch bar resting
> within the magazine side-locking recess
>
> An upper tension bar which extends towards and contacts
> the upper receiver[.]

'845 patent, claim 8) (emphasis supplied).[3]  Claim 1 recites a firearm with a fixed

magazine and contains a similar "magazine catch bar" limitation.

## II.    The District Court Proceedings

Evolusion brought suit against Juggernaut, alleging infringement of claims 1-

3 and 8-10 of the '845 patent (claim 15 was initially asserted but subsequently

dropped).  Juggernaut moved for summary judgment of noninfringement under the

"magazine catch bar" term because (1) the term excluded a factory-installed

---

[3] All emphases are supplied unless otherwise noted.

magazine catch bar; and (2) Juggernaut's product keeps the factory-installed magazine catch bar in place and un-modified. *See* Appx8–9, 17.

The District Court granted Juggernaut's Motion. Appx12–20. The Court's decision largely hinged on the *Verizon*-line of precedent, which instructs that "[w]hen a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon*, 503 F.3d at 1308 (collecting cases). The specification, as the Court explained, "clearly specifies that the invention is installed on a semi-automatic firearm 'by removing the standard OEM magazine catch assembly and installing the invention,'" a fact the Court found compelling in reaching its construction:

> The description clearly specifies that the invention is installed on a semi-automatic firearm "by removing the standard OEM magazine catch assembly and installing the invention," and Evolusion has not offered a convincing reason why the Court should ignore this language. It therefore provides compelling support for Juggernaut's proposed interpretation.

Appx14 (quoting '845 Patent at 2:55-58).[4] Because Juggernaut's accused product keeps the factory-installed magazine catch bar in place, the Court entered judgment of noninfringement. *See* Appx8–9, 17.

---

[4] The District Court also concluded that unasserted claim 15 supported the Court's construction that the "magazine catch bar" could not be a factory-installed bar that remained after conversion because claim 15 recited removing a "factory installed magazine catch bar" assembly and then "[i]nstalling a magazine catch bar." Appx1–17.

III.    **The Panel Decision**

The Panel reversed the District Court's noninfringement judgment. It concluded that "[n]othing in the language of claims 1 and 8 limits the scope of the generic term 'magazine catch bar' to exclude one that was factory installed. . . ." *Panel Dec.* at 9. Addressing the language on which the District Court relied—"[t]he invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention"—the Panel determined that the language did not exclude all uses of a factory-installed magazine catch bar. *Id.* at 12. That is because a factory-installed catch bar could be "remov[ed]" and the same catch bar (meaning the same piece of metal) could then be "install[ed]." *Id.* at 10 (discussing claim 15); *id.* at 12 ("For the reasons already discussed with respect to claim 15, the specification sentence does not preclude the installation of a factory-installed magazine catch bar."). The Panel did not address "the invention is" cases, including *Verizon*, even though that authority was the focus of the District Court's Order and the parties' briefing on appeal. *See Id.* at 12.

The Panel held that the "magazine catch bar" term, "by its ordinary meaning, could be either [1] the removed catch bar or a [2] new or different catch bar." *Panel Dec.* at 10. The Panel then entered summary judgment of infringement. *Id.* at 12. The Panel reached this conclusion even though in Juggernaut's accused product the factory magazine catch bar (or any part of the catch assembly) is not removed and

does not use a new or different catch bar.  The Panel entered the ruling "because the parties have agreed that direct infringement of claims 1 and 8 is established if the term 'magazine catch bar' is construed to include a factory-installed magazine catch bar." *Id.* at 12.  This Petition followed.

## ARGUMENT

## I.    Panel Rehearing is Appropriate

Panel rehearing is appropriate for two independent reasons.  First, the *Verizon*-line of cases foreclosed a construction that encompasses using any factory-installed catch bar because that construction would read "the invention is" language and "invention 10" disclosures out of the '845 patent.  Applying that definition required affirming the District Court.

Second, judgment of infringement was inappropriate under the Panel's apparent construction.  If the Panel's construction of "magazine catch bar" encompassed *any* factory-installed catch bar (whether removed or not), *Verizon* foreclosed that construction.  But it appears that the Panel did not enter such a construction.  The Panel held that the "magazine catch bar" term, "by its ordinary meaning, could be either [1] the removed catch bar or a [2] new or different catch bar." *Panel Dec.* at 10.  Juggernaut's accused product undisputedly does not meet either requirement.   Juggernaut is thus at least entitled to a vacated infringement judgment so it can litigate this issue before the District Court.

## A.    The Panel Overlooked The Established Line of "The Invention Is" Precedent

The Panel overlooked the well-established law that "[w]hen a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon*, 503 F.3d at 1308 (collecting cases); *see also Forest Labs.*, 918 F.3d at 933 (same); *Regents of the Univ. of Minn.*, 717 F.3d at 936 (same); *GPNE*, 830 F.3d at 1371 (same).  The District Court applied the *Verizon* precedent, Appx14, and the parties addressed that precedent in their briefs.  But the Panel did not cite or apply the precedent.  *See Panel Dec.* at 12.

*Verizon*, however, is dispositive.  The specification states that "*[t]he invention is* a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention."  '845 patent at 2:55-58); *see also id.* at 4:65-67 ("*[I]nvention 10* is securely placed in a recess in the magazine well 45 to hold the magazine 40 in place so that it cannot be removed from the magazine well 45."); *id.* at 5:2-4 ("the *invention 10* freely moves. . . .").  Moreover, as noted above, the inventor testified, consistent with the patent, that he invented a modified magazine catch bar.  Appx15057 (ll. 14-16).

The specification thus defines what the invention "*is*" as a whole—it does not refer to "an embodiment of the invention," "an aspect of the invention," or "one way to convert a firearm according to the invention."  Indeed, the language is from the "Summary of the Invention" section, which further signals that the language is

9

limiting.  *See, e.g.*, *TriStrata, Inc. v. Microsoft Corp.*, 594 Fed. Appx. 653, 656 (Fed. Cir. 2014) (non-precedential)  (quoting *C.R. Bard, Inc. V. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004)).

And the language here is even stronger than the language found limiting in the *Verizon*-line of cases.  *See, e.g.*, *GPNE*, 830 F.3d at 1371 ("Thus, the invention provides a two-way paging system which operates independently from a telephone system. . . ."); *Forest Labs.*, 918 F.3d at 933 ("The invention relates to a sublingual or buccal pharmaceutical composition . . . The invention therefore relates to a sublingual or buccal pharmaceutical composition . . . ."); *Honeywell*, 452 F.3d at 1318 ("This invention relates to a fuel filter . . . . According to the present invention, a fuel filter for a motor vehicle is made from . . ."). More than "provides" (*GPNE*) or "relates to" (*Forest Labs* and *Honeywell*), the patentee here told the public what the invention "*is*."  The "invention is" language is more definitive than "provides" or "relates to."  That definition is binding under *Verizon*.

The Panel also did not address any exceptions to the *Verizon*-line of authority, such as when the disclosure refers to only "one way to carry out the present invention," does not "uniformly require [the limiting feature]," or describes the feature as "optional."  *Campbell Soup Co. v. Gamon Plus, Inc.*, No. 2020-2322, 2021 U.S. App. LEXIS 24763, at *13–14 (Fed. Cir. Aug. 19, 2021) (non-precedential) (collecting authority).  None of those exceptions apply here.  The statement is not

directed to one embodiment or subgroup of claims.  By its terms, it defines the full invention—what "the invention is."  Nor is there a broader disclosure that might suggest that the claimed "magazine catch bar" encompasses OEM catch bars.  It was undisputed that the "disclosed embodiments do not illustrate OEM magazine catch bars," as the Panel recognized.  *Panel Dec.* at 11.

If *Verizon* were properly applied, any construction would explicitly require "***removing*** the standard OEM magazine catch assembly."  '845 patent at 2:55-58.  The Panel focused its analysis on whether an OEM magazine catch bar can be reused.  Even if the OEM catch bar could be reused, however, the "invention is" language still requires that it first be *removed*.  The OEM/non-OEM distinction misses the "removing" requirement of the "invention is" definition.  Any construction of "magazine catch bar" under *Verizon* must necessarily include at least removal because that is what the patent says the "invention is."

The *Verizon* precedent governs and requires affirming the judgment.  The parties agree that Juggernaut's products do not involve removing magazine catch assembly—either OEM or non-OEM.  At a minimum, the judgment of infringement was not appropriate, as detailed below.

## B.    The Panel Overlooked the Fact That Juggernaut's Products Do Not Remove the Magazine Catch Bar

Even under the Panel's apparent construction, the Panel incorrectly entered judgment of infringement.  The Panel appeared to construe the claims to cover that

11

the *same* magazine catch bar could be removed and then installed during conversion—"[t]he inventors, in the independent claims, did not choose to claim a device with a 'new' or 'different' magazine catch bar, but instead a device with '*a* magazine catch bar,' which, ***by its ordinary meaning, could be either the removed catch bar or a new or different catch bar***." *Panel Dec.* at 10.

The Panel appears to have overlooked the fact that Juggernaut's product does not contain a "magazine catch bar" under this construction: the accused bar is not "the removed catch bar or a new or different catch bar"—the product does not remove the factory-installed catch bar at all.  And the Panel could have affirmed the judgment based on that undisputed fact.

The parties agreed below that nothing in the magazine catch assembly (which includes the catch bar) in Juggernaut's product is removed, altered, reinstalled, or otherwise modified.  *See, e.g.*, Appx15568 (at ll. 22-26) (statement by Evolusion that, during the proceedings below, that it withdrew certain claims "[w]hen it became clear that the accused kits and firearms do not necessarily require removing the factory installed magazine catch assembly of a firearm. . . ."); Appx7 at n.1 (citing statement by Evolusion); Appx001006 (statement by Juggernaut that "[t]he Accused Products do not contain a modified magazine catch – the factory and standard magazine catch assembly is left intact.  It is not removed, modified or replaced by Defendant. . . .").

This evidence was not the focus of the briefing because the parties addressed a different issue, *i.e.*, whether the "magazine catch bar" term excluded *all* factory-installed bars as opposed to whether an OEM magazine catch bar could be reinstalled. The Panel appears to have addressed that issue with a new construction, *viz.*, that the ordinary meaning of the term encompassed "either the removed catch bar or a new or different catch bar." *Panel Dec.* at 10.

The proper course under this construction was to at least vacate the judgment and remand the case for further proceedings. *See, e.g.*, *Beckson Marine v. Nfm, Inc.*, 292 F.3d 718, 724 (Fed. Cir. 2002) ("Because this court cannot resolve such factual issues, a change in the claim construction at the appellate level generally necessitates a remand to the district court to resolve the new factual issues raised by the new claim construction, except, of course, in the rare instance that the record on appeal leaves no genuine issues of material fact and entitles the movant to judgment as a matter of law."). The District Court (as a legal matter) or a jury (as a factual matter) certainly could find that Juggernaut does not infringe based the agreed facts above.

The Panel instead entered judgment because "the parties have agreed that direct infringement of claims 1 and 8 is established if the term 'magazine catch bar' is construed to include a factory-installed magazine catch bar." *Panel Dec.* at 12. This misapprehends Juggernaut's agreement.

13

Juggernaut did not (and could not) stipulate to infringement based on a new construction entered on appeal in which the "magazine catch bar" encompassed (1) the removed catch bar or (2) a new or different catch bar. And basic principles of due process entitle Juggernaut to the opportunity to litigate infringement before the District Court under the new construction. *See, e.g.*, Fed. R. Civ. P. 56(f) (requiring notice and reasonable opportunity to respond before a court can grant summary judgment on "grounds not raised by a party").

## II. En Banc Consideration is Required to Avoid Upsetting the Public's Settled Expectations About the Scope of Countless Patents

If left unmodified, the Panel's precedential decision should be reviewed en banc. "Claim construction is the single most important event in the course of a patent litigation," as it "defines the scope of the property right being enforced." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 659 F.3d 1369, 1370 (Fed. Cir. 2011) (Moore, C.J., dissenting in denial of petition for rehearing en banc).

Consistent law on how to interpret the "the invention is" (or "the present invention is") language is particularly important. The phrase "the invention" (or its variant, "present invention") is one of the most-used phrases in patent drafting.[5] And, until this case, this Court had an established line of authority of how to interpret

---

[5] According to searches of the U.S. Patent & Trademark Office, the phrase "present invention" appears in over five million issued patents.

that standard language: "[w]hen a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon*, 503 F.3d at 1308. And this authority was entrenched in the law—the 2007 *Verizon* case alone has been cited in over 40 of this Court's decisions and over 300 district court decisions.[6]

The Panel's precedential decision upends that settled law. It holds that the express language "the invention is" did not impact the scope of the claims, even when that language is consistent with the balance of the patent's disclosure and inventor's sworn testimony. And it blurs the property lines of innumerable patents because it is now unclear if the interested public is "entitled to take the patentee at his word" when the patentee tells the public what "the invention is." *Honeywell*, 452 F.3d at 1318 ("On at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention' . . . . The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter.").

The decision also conflicts with the established line of *Verizon* authority and *Phillips*, which will lead to inconsistent applications of the law. In *GPNE*, for example, the same panel of this Court applied *Verizon* and reached the opposite conclusion on a patent with weaker language. 830 F.3d at 1371. There, "a single

---

[6] Data from LexisNexis.

summation sentence" in the specification described what the "invention provides" and the Court found it limiting. *Id.* Here, the patent states what the "invention is" and further illustrated "invention 10" in the figures. But, unlike *GPNE*, the Panel concluded that these statements were not limiting. The difference in result, despite stronger facts in this case, will lead to inconsistent and non-uniform case outcomes.

Indeed, beyond *GPNE*, this Court had consistently held that statements that "the invention provides" and "the invention relates to" are limiting in the absence of contrary evidence. *See, e.g.*, *Forest Labs.*, 918 F.3d at 933 ("The invention relates to . . . ."); *Honeywell*, 452 F.3d at 1318 ("This invention relates to. . . ."). The patentee here told the public even more—that "[t]he invention *is* a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." '845 patent at 2:55-58. And it was undisputed that the embodiments lack a broader disclosure (they even refer to and illustrate "invention 10"). *Panel Dec.* at 11.

The Panel disregarded that definitional language in the specification in favor of a plain-meaning construction. But this approach conflicts with *Phillips*: the specification is "the single best guide to the meaning of a disputed term," and, usually, "it is dispositive." 415 F.3d at 1315. And a plain-meaning construction cannot trump the specification's definition of what "the invention is"—the "ordinary meaning of a claim term is not 'the meaning of the term in the abstract'" but instead

is the "meaning to the ordinary artisan after reading the entire patent." *AstraZeneca AB v. Mylan Pharm. Inc.*, No. 2021-1729, --- F.4th ---, 2021 U.S. App. LEXIS 36127, at *8–9 (Fed. Cir. 2021) (collecting authority).  The patentee here bluntly told skilled artisans what "the invention is."  It should be held to that statement.

Lastly, this case is an appropriate vehicle to address these issues en banc.  It involves relatively simple technology, a single claim-construction issue, and it is undisputed that the embodiments are consistent with the patentee's statement of what "the invention is."  Rehearing en banc is thus appropriate to address this narrow but immensely important claim-construction issue.

## III.    CONCLUSION

For the reasons above, Juggernaut respectfully requests rehearing and rehearing en banc.


Dated: 02/14/2022                           Respectfully submitted,

                                            /s/ Christian Hurt
                                            Christian Hurt

                                            Davis Firm, P.C.
                                            213 N. Fredonia Street
                                            Suite 230
                                            Longview, Texas 75601
                                            (903) 230-9090
                                            churt@bdavisfirm.com

17

BRAXTON PERRONE, PLLC
5 Cowboys Way Suite 300
Box 32
Frisco, TX 75034
Telephone: (469) 814-0028
Facsimile: (469) 814-0023


Attorneys for Appellee,
JUGGERNAUT TACTICAL, INC.

ADDENDUM

# United States Court of Appeals for the Federal Circuit

———————————————

**EVOLUSION CONCEPTS, INC.,**
*Plaintiff-Appellant*

**v.**

**HOC EVENTS, INC., DBA SUPERTOOL USA,**
*Defendant*

———————————————

2021-1963

———————————————

Appeal from the United States District Court for the Central District of California in No. 2:19-cv-02736-JLS-DFM, Judge Josephine L. Staton.

-------------------------------------------------

**EVOLUSION CONCEPTS, INC.,**
*Plaintiff-Appellant*

**v.**

**JUGGERNAUT TACTICAL, INC.,**
*Defendant-Appellee*

———————————————

2021-1987

———————————————

Appeal from the United States District Court for the Central District of California in No. 8:18-cv-01378-JLS-DFM, Judge Josephine L. Staton.

————————————

Decided: January 14, 2022

————————————

ALLEN MARCEL SOKAL, Insigne PC, Carlsbad, CA, argued for plaintiff-appellant. Also represented by TREVOR CODDINGTON; DONNY SAMPORNA, Haley Guiliano LLP, San Jose, CA.

BOBBY BRAXTON, Braxton Perrone PLLC, Frisco, TX, argued for defendant-appellee. Also represented by GREGORY PERRONE.

————————————

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Evolusion Concepts, Inc. owns U.S. Patent No. 8,756,845, titled "Method and Device for Converting Firearm with Detachable Magazine to a Firearm with Fixed Magazine." In the main case before us, Evolusion sued Juggernaut Tactical, Inc. in the Central District of California, alleging infringement of claims 1–3 and 8–10 of the '845 patent. On the parties' cross-motions for summary judgment regarding infringement, the district court granted Juggernaut summary judgment of non-infringement. *Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc.*, No. 8:18-cv-01378, 2021 U.S. Dist. LEXIS 77792, at *27 (C.D. Cal. Apr. 5, 2020) (*Juggernaut Decision*). The court's key ruling was that the term "magazine catch bar" in the asserted claims of the '845 patent excludes a factory-installed magazine catch bar. *Id.* at *13–22. That claim construction concededly precludes literal infringement, the court held, because Juggernaut's products use the factory-

installed magazine catch bar. *Id.* at *22–23. The court also determined that Juggernaut does not infringe under the doctrine of equivalents. *Id.* at *23–26.

On Evolusion's appeal, we hold that the term "magazine catch bar" in the asserted claims includes a factory-installed magazine catch bar. We therefore reverse the grant of summary judgment of non-infringement, reverse the denial of summary judgment of direct infringement as to the independent claims 1 and 8, and remand for further proceedings in Appeal No. 21-1987, which is the appeal in the *Juggernaut* case. We also vacate and remand in Appeal No. 21-1963, which involves a separate, related case, discussed near the end of this opinion.

I

A

The '845 patent describes a device and method for converting a semi-automatic rifle with a detachable magazine to one with a fixed magazine. '845 patent, col. 2, lines 3–5. A detachable magazine allows a user to fire the weapon until the magazine is depleted, then simply release the magazine, insert a new magazine, and resume firing. *Id.*, col. 1, lines 22–27. A fixed magazine, in contrast, can be removed and replaced only by disassembling certain non-magazine parts of the firearm, slowing the rate of fire. *Id.*, col. 1, lines 50–53; col. 2, lines 20–28. The specification explains that firearms with detachable magazines are likely to face increased legal restrictions. *Id.*, col. 1, lines 63–64. In particular, the specification notes the introduction in Congress of a bill to enact the Assault Weapons Ban of 2013, which would have banned semi-automatic weapons with detachable magazines. *Id.*, col. 1, lines 30–59.

The patent describes a "standard OEM [original equipment manufacturer] semi-automatic rifle" as having a "magazine catch assembly" containing several components. *Id.*, col. 2, lines 35–53. It then describes "[t]he invention"

as a "permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." *Id.*, col. 2, lines 55–58. At least in "one aspect of the present invention," the resulting firearm contains "a lower receiver, a magazine catch bar, and an upper tension bar." *Id.*, col. 2, lines 65–67. The magazine catch bar can be attached to the lower receiver of the firearm and fit within a recess of the magazine well. *Id.*, col. 2, line 67, through col. 3, line 2. The upper tension bar on the lower receiver applies pressure against the firearm's upper receiver, rendering the magazine catch bar immovable. *Id.*, col. 3, lines 2–6. The magazine can be released only when the upper receiver is separated from the lower receiver. *Id.*, col. 4, line 64, through col. 5, line 4; *id.*, figs. 1 & 2. The specification also discusses a method of installing the invention, comprising removing the entire factory-installed magazine release button assembly, installing a magazine catch bar onto the lower receiver, and installing an upper tension bar onto the lower receiver. *Id.*, col. 3, lines 48–65.

The '845 patent has three independent claims. These claims are:

1. A firearm with a fixed magazine comprising

a lower receiver having a magazine well configured to receive a magazine with a side-locking recess with a recess in the magazine well

a *magazine catch bar* securely attached to the firearm, said magazine catch bar resting within the magazine side-locking recess

an upper tension bar which extends towards and contacts the upper receiver.

8. A device for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising

A *magazine catch bar* securely attached to the lower receiver of said firearm, said magazine catch bar resting within the magazine side-locking recess

An upper tension bar which extends towards and contacts the upper receiver.

15. A method for converting a firearm with a detachable magazine into a firearm with a fixed magazine comprising

Removing the factory installed magazine release button assembly

Said removal comprising the steps of

depressing the magazine release button to a sufficient depth to permit the *factory installed magazine catch bar* to extend beyond the magazine well of the lower receiver,

rotating the *factory installed magazine catch bar* in a counterclockwise fashion until the *factory installed magazine catch bar* is unthreaded from the factory installed screw end of the magazine release button,

removing all parts of the factory installed magazine release button assembly

Installing a *magazine catch bar* to the lower receiver of the firearm, said magazine catch bar resting within the magazine side-locking recess

Installing an upper tension bar to the lower receiver of the firearm, said upper tension bar extending towards and contacting the upper receiver.

*Id.*, col. 7, lines 27–35; col. 8, lines 4–10; col. 8, lines 47–67 (emphases added).

## B

In August 2018, Evolusion sued Juggernaut for infringement of claims 1, 8, and 15 of the '845 patent based on Juggernaut's manufacture and sale of its "Hellfighter Mod Kits," which convert a firearm with a detachable magazine into a firearm with a fixed magazine. Juggernaut asserted invalidity as an affirmative defense and filed a counterclaim for a declaratory judgment limited to non-infringement. Subsequently, Evolusion dropped its assertion of method claim 15 and added assertions of infringement of dependent claims 2–3 and 9–10 (apparatus claims). In claim-construction proceedings from May to July 2019, the only phrase for which the parties sought a construction was "upper tension bar," but the court decided that no construction was needed.

Evolusion then sought summary judgment of direct infringement, as well as induced and contributory infringement, of claims 1–3 and 8–10. Juggernaut, for its part, moved for summary judgment of non-infringement. At that time, construction of the term "magazine catch bar" became necessary, because in Juggernaut's products the factory-installed magazine catch bar is retained in the conversion of a firearm to one with a fixed magazine. The parties agreed that whether Juggernaut infringes independent claims 1 and 8 "depends entirely on" whether the claim phrase "magazine catch bar" includes a factory-installed (OEM) magazine catch bar. *Juggernaut Decision* at *7.

The district court concluded that the term "magazine catch bar," as used in the claims and specification, excludes an OEM magazine catch bar. *Id.* at *16–17. The court based its determination primarily on the sentence in the specification that states: "The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." '845 patent, col. 2, lines 55–58. Because the

OEM magazine catch bar is one of the components removed to install "the invention," the court determined that the "magazine catch bar" of the invention cannot be an OEM magazine catch bar. *Juggernaut Decision* at *17. The court also reasoned that the language of unasserted claim 15 supports its construction. Because claim 15 requires removing "the factory installed magazine catch bar" and then installing "a magazine catch bar," the court concluded that the magazine catch bar that is installed must be "separate and distinct from the factory-installed magazine catch bar"; otherwise, "factory-installed" would be superfluous. *Id.* at *20–22. And because a term that appears in multiple claims should be given the same meaning in all those claims, the court held that the term "magazine catch bar" in claims 1 and 8 similarly must exclude a factory-installed magazine catch bar. *Id.* at *21. Under that construction, as noted, Juggernaut does not literally infringe independent claims 1 and 8. *Id.* at *22.

The court proceeded to rule that, under the construction it had adopted, Juggernaut cannot infringe under the doctrine of equivalents. It reasoned that, by disclosing but not claiming a factory-installed magazine catch bar, Evolusion had dedicated a factory-installed magazine catch bar to the public. *Id.* at *25. It added that, because the terms "magazine catch bar" and "factory-installed magazine catch bar" are separately identified in the '845 patent, the magazine catch bar of the claims cannot be an insubstantial alteration of a factory-installed magazine catch bar. *Id.* at *25–26.

The court went on to explain that, because Juggernaut does not directly infringe claims 1 and 8, it does not directly infringe the other asserted claims, all dependent on claim 1 or claim 8; that, if there is no direct infringement, Juggernaut also does not indirectly infringe any asserted claims; and, finally, that the affirmative defense of invalidity need not be considered. *Id.* at *26–28. None of those

rulings are disputed on appeal. The district court entered a final judgment of non-infringement in April 2021.

Evolusion timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[1]

## II

We begin with the claim-construction issue presented respecting claims 1 and 8. Claim construction is ultimately a question of law, decided de novo on review, as are the intrinsic-evidence aspects of a claim-construction analysis. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The district court relied for its claim construction in *Juggernaut* only on intrinsic evidence from the specification, *see Juggernaut Decision* at *16–22, and we therefore review the construction de novo. The question is whether the term "magazine catch bar" in the asserted claims includes a factory-installed magazine catch bar.

"[T]he words of a claim 'are generally given their ordinary and customary meaning,'" as understood by a relevant artisan at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations omitted). A relevant artisan is not deemed to read a term in a vacuum, but instead "is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears," and "in the context of the entire patent, including the specification." *Id.* at 1313. And because

---

[1]    On October 26, 2021, the district court issued an order granting attorney's fees to Juggernaut as a "prevailing party" under 35 U.S.C. § 285. On November 24, 2021, the court issued an amended final judgment incorporating the award of attorney's fees. On December 3, 2021, Evolusion filed an amended notice of appeal to include, in this appeal, the district court's final judgment granting attorney's fees to Juggernaut. Juggernaut has not objected to inclusion of that order in this appeal.

"claim terms are normally used consistently throughout the patent," other claims of the patent, both asserted and unasserted, can provide insight into the meaning of a claim term. *Id.* at 1314; *see also In re Varma*, 816 F.3d 1353, 1363 (Fed. Cir. 2016) ("[T]he principle that the same phrase in different claims of the same patent should have the same meaning is a strong one, overcome only if 'it is clear' that the same phrase has different meanings in different claims." (citation omitted)).

Independent claims 1 and 8 claim a firearm and a device, respectively, that contain "a magazine catch bar," which is securely attached to the firearm and sits within the recess of the lower receiver. '845 patent, col. 7, lines 27–35; col. 8, lines 4–10. Nothing in the language of claims 1 and 8 limits the scope of the generic term "magazine catch bar" to exclude one that was factory installed—specifically, as Juggernaut asserts, factory installed as part of an original firearm with a detachable magazine. Nor does Juggernaut assert that either the ordinary meaning of the phrase itself, or any other language in these claims, points to such a restriction based on provenance.

Juggernaut instead relies on unasserted claim 15, which, it argues, informs the meaning of "magazine catch bar" in claims 1 and 8 and precludes adopting the ordinary meaning of "magazine catch bar." Juggernaut is correct that the meaning of the term in claims 1 and 8 could well be informed by a meaning of the term made sufficiently clear in claim 15. *See Phillips*, 415 F.3d at 1314. But Juggernaut is incorrect that the use of "magazine catch bar" in claim 15 narrows the meaning of the term to support the urged exclusion of factory-installed magazine catch bars.

Independent claim 15 claims a method of removing the factory-installed magazine release button assembly and installing a new device. The claim's first step requires "removing *all parts* of the factory installed magazine release button assembly." '845 patent, col. 8, lines 47–67

(emphasis added). One of the components of that assembly is "the factory installed magazine catch bar." *Id.* The next steps involve installing two components: an upper tension bar and "a magazine catch bar." *Id.* The invention thus involves removing and installing *assemblies* of parts—not *only* magazine catch bars. An instruction that identifies the removed assembly as including a factory-installed magazine catch bar, which focuses the process on conversion of what came from a factory, does not imply any preclusion of reuse of the same bar as one part of the assembly being installed in place of the removed assembly. The ordinary meaning of the claim language allows the factory-installed magazine catch bar to be removed as part of the initial assembly removal and reused as part of the assembly installed in a later step.

Accepting Juggernaut's position would amount to reading additional limitations into claim 15 not required by its language. Claim 15 requires only "removing" a specific type of magazine catch bar (the one installed by the manufacturer) and then installing "*a* magazine catch bar." *Id.* (emphasis added). It does not require, as a removal step, "discarding" the OEM catch bar. Nor does it require installing a "new" or "different" magazine catch bar. Juggernaut argues that the use of "a" before "magazine catch bar," instead of antecedent-basis language such as "said" or "the," means that the two magazine catch bars must be different. The use of antecedent-basis language like "said" or "the," however, would have narrowed the term to cover *only* a factory installed magazine catch bar, and neither party advances that construction. The inventors, in the independent claims, did not choose to claim a device with a "new" or "different" magazine catch bar, but instead a device with "*a* magazine catch bar," which, by its ordinary meaning, could be either the removed catch bar or a new or different catch bar.

The specification supports the ordinary-meaning interpretation of "magazine catch bar." *Phillips*, 415 F.3d at

1315 ("[C]laims must be read in view of the specification, of which they are part." (internal quotation marks and citation omitted)). The specification nowhere limits the scope of a "magazine catch bar" to exclude factory-installed ones from the assembly that achieves the fixed-magazine goal. Nor, contrary to a suggestion made by Juggernaut, does it explain that only a customized or modified magazine catch bar, one necessarily different from what was factory installed, may be used on the firearm. It simply explains that the described embodiments of the invention all include a "magazine catch bar" that can be securely attached to the lower receiver of the firearm, and consistently describes the component in generic terms. *Id.*, col. 2, line 65, through col. 3, line 2; *see also id.*, col. 5, lines 5–7.

Juggernaut argues, and Evolusion concedes, that the disclosed embodiments do not illustrate OEM magazine catch bars. *See id.*, figs. 3 & 4. But that cannot make a difference in this case. We have repeatedly held that "it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning." *Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) (internal quotation marks and citation omitted). Here, nothing in the specification suggests that factory (or OEM) provenance of a bar disqualifies it from being part of the invention if, as a structural matter, it is a magazine catch bar under the ordinary meaning. And nothing in the specification suggests that factory (or OEM) installation precludes the possession of the structural features required by the invention. The specification reiterates the background principle that the claims are not limited to the illustrated embodiments. '845 patent, col. 4, lines 46–53. And it describes and illustrates at least one embodiment in which the magazine catch bar is a separate element from the upper tension bar, *id.*, col. 5, lines 5–10, 17–20; *id.*, fig. 3, reinforcing the idea that there is no requirement to replace each individual

component in the assembly in order to replace the assembly as a whole.

The district court relied primarily on one sentence of the specification to conclude that the specification excludes a factory-installed magazine catch bar: "The invention is a permanent fixture added to a semi-automatic firearm by removing the standard OEM magazine catch assembly and installing the invention." '845 patent, col. 2, lines 55–58. But that statement has the same character as what is found in claim 15. For the reasons already discussed with respect to claim 15, the specification sentence does not preclude the installation of a factory-installed magazine catch bar.

Finally, Juggernaut argues that the patent is "abundantly clear" that the invention cannot function with the OEM magazine catch assembly. Juggernaut's Opening Br. at 8. But Juggernaut fails to cite to any portion of the specification that supports this operability assertion.

We thus construe the term "magazine catch bar" according to its ordinary meaning, which includes a factory-installed magazine catch bar. This construction not only requires reversal of the grant of summary judgment to Juggernaut—all parts of which relied on the claim construction we have held to be incorrect as a matter of law. It also requires reversal of the denial of summary judgment of infringement to Evolusion as to claims 1 and 8, because the parties have agreed that direct infringement of claims 1 and 8 is established if the term "magazine catch bar" is construed to include a factory-installed magazine catch bar. Oral Arg. at 29:55–30:15 (Juggernaut's counsel conceding that the "sole issue" of literal infringement of claim 1 and 8 is the construction of "magazine catch bar"); *see also Juggernaut Decision* at *7. There is no such agreement about the dependent claims, which must be reconsidered on remand, along with any issues in the case about indirect infringement or the affirmative defense of invalidity. The

district court's determination that it need not reach those issues depended on its conclusions we reverse here.

We reverse the court's grant of summary judgment of no infringement, reverse the court's denial of summary judgment of infringement of claims 1 and 8, and remand for the district court to address the other asserted claims. Because we reverse the court's determination of literal infringement, we need not reach the court's determination of infringement under the doctrine of equivalents. We vacate the award of attorney's fees because Juggernaut is no longer a prevailing party, a status required to receive a fee award under 35 U.S.C. § 285.

## III

Appeal No. 21-1963 involves a separate infringement action brought by Evolusion against HOC Events, Inc., dba Supertool USA, alleging infringement of both product and method claims of the '845 patent. When HOC failed to respond to the complaint, the clerk of the district court entered a "default" under Federal Rule of Civil Procedure 55(a). With the requests for relief not yet adjudicated, Evolusion moved for a "default judgment" under Rule 55(b), but the court denied the motion. In its denial, the court, citing its ruling in the *Juggernaut* case, stated that Evolusion failed to state a viable claim for infringement against HOC, because HOC's products require reusing the factory-installed magazine catch bar. *Evolusion Concepts, Inc. v. HOC Events, Inc.*, No. 2:19-cv-02736, 2021 WL 2007068 (C.D. Cal. Apr. 14, 2021). Evolusion noticed an appeal from the April 14 order. HOC has not appeared on appeal.

The April 14 order on its face merely denies Evolusion a judgment in its favor; it does not order any judgment against Evolusion, let alone a final judgment. Nor is the clerk-entered Rule 55(a) "default" a final judgment against Evolusion. *See* 15A C. Wright & A. Miller, Federal Practice and Procedure § 3914.5 & nn.1.50 & 2 (2d ed.). But, although Evolusion has not addressed the jurisdictional

finality problem raised by those facts, we think it proper to treat the April 14 order as a final judgment. The order declares that Evolusion has no claim it can pursue, and in light of that declaration there was evidently nothing left to do in the litigation in district court after the April 14 order. Indeed, the clerk notified the Patent and Trademark Office of termination of the case on the same date, and the court's official electronic docket records the case as closed. In these circumstances, we treat the April 14 order as a final judgment, which we have jurisdiction to review under 28 U.S.C. § 1295(a)(1). For the reasons set forth in our discussion of the *Juggernaut* case, we vacate the April 14 order in the HOC case and remand for further proceedings consistent with this opinion.

## IV

For the foregoing reasons, we reverse the entry of summary judgment of non-infringement, reverse the denial of summary judgment of direct infringement as to claims 1 and 8, vacate the award of attorney's fees, and remand for further proceedings consistent with our claim construction in Appeal No. 21-1987. We vacate and remand in Appeal No. 21-1963.

The parties shall bear their own costs.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-1981

**Short Case Caption:** Evolusion Concepts, Inc. v. Juggernaut Tactical, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 3,823 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/14/2022

Signature: /s/ Gregory Perrone

Name: Gregory Perrone

Save for Filing